**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| **LARRIE HOPE** | ) | |
| | ) | |
| **Plaintiff(s),** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **CASE NO.: 2:07-CV-210-T** |
| **RICHARD ALLEN, ET AL.** | ) | |
| | ) | |
| **Defendant(s).** | ) | |
| | ) | |
| | ) | |

**ANSWER AND SPECIAL REPORT**

COME NOW the Defendants, **Allen, Rowell, Barrett, Bolling, Clay, Barber, Pettaway, Dinkins, Smith, and Baggett**, by and through undersigned counsel, and in accordance with this Honorable Court's Order, offer the following Answer and Special Report:

**PARTIES**

1.  The Plaintiff, Larry Hope, is an Alabama Department of Corrections ("ADOC") inmate currently incarcerated in Kilby Correctional Facility ("KCF").

2.  Defendant Richard Allen is currently employed by ADOC as Commissioner.

3.  Defendant W. G. Rowell is currently employed by ADOC as Deputy Warden at KCF.

4.  Defendant Bobby Barrett is currently employed by ADOC as a Captain at KCF.

5.  Defendant Leon Bolling is currently employed by ADOC as a Captain at KCF.

6.  Defendant Carl Clay is currently employed by ADOC as a Lieutenant at KCF.

7.  Defendant Tericus Dinkins is currently employed by ADOC as a Correctional Officer I at KCF.

8. Defendant Anthony Barber is currently employed by ADOC as a Correctional Officer I at KCF.

9. Defendant Roosevelt Pettaway is currently employed by ADOC as a Correctional Officer I at KCF.

10. Defendant Allen Smith is currently employed by ADOC as a Correctional Officer I at KCF.

11. Defendant Angie Baggett is currently employed by ADOC as a Classification Specialist Supervisor at KCF.

## EXHIBITS

EXHIBIT 1 – Affidavit of Officer Pettaway

EXHIBIT 2 – Affidavit of Officer Barber

EXHIBIT 3 – Affidavit of Officer Dinkins

EXHIBIT 4 – Affidavit of Lieutenant Clay

EXHIBIT 5 – Affidavit of Captain Bolling

EXHIBIT 6 – Affidavit of Officer Smith

EXHIBIT 7 –Affidavit of Warden Rowell

EXHIBIT 8 – Incident Report number 06-552

EXHIBIT 9 – Affidavit of Captain Barrett

EXHIBIT 10- Affidavit of Angie Baggett

EXHIBIT 11- Order dated November 8, 2005

## PLAINTIFF'S CLAIMS

Plaintiff alleges on July 6, 2006, that Officer Pettaway cursed him and choked him and that he was retaliated against due to a prior lawsuit he filed. The Plaintiff alleges

in his Amended Complaint that he is being improperly held in segregation and should be transferred to a different prison or released into population at KCF.

## DEFENDANTS' RESPONSE

1.    The Defendants deny that they violated the Plaintiff's constitutional rights.

2.    The Defendants deny each and every material allegation not specifically admitted herein and demand strict proof thereof.

3.    The Plaintiff has failed to state a claim upon which relief may be granted.

4.    The Defendants are immune from suit under the Eleventh Amendment to the United States Constitution.

5.    The Defendants are immune from suit due to qualified immunity.

6.    Defendants Allen, Rowell, Barrett, Bolling, and Clay are entitled to judgment based on the fact that the claims against them rise out of assertions under respondeat superior, which cannot be maintained under 42 U.S.C. §1983.

## STATEMENT OF FACTS

On July 6, 2006, during second shift, Officer Pettaway was assigned as the officer on C and D Blocks in the segregation unit at KCF.  (Exhibit 1-Affidavit of Officer Pettaway)  Officer Barber was assigned as the rover for the segregation unit.  (Exhibit 2-Affidavit of Officer Barber)  Inmate Hope was taking shower in the B block shower area.  (Exhibit 1)    Officer Pettaway heard loud yelling coming from the B block shower and went to the area.  Officer Pettaway asked Inmate Hope to keep the noise down.  Inmate Hope refused to follow this directive and continued talking loudly and began making threats.  Inmate Hope stated to Officer Pettaway, "I'm going to kill you."  (Exhibit 1) Officer Pettaway, with Officer Barber's assistance, began escorting Inmate Hope to his

cell. (Exhibits 1 and 2)  As they approached North Control, Inmate Hope suddenly turned toward Officer Pettaway with a clutched fist and swung at Officer's Pettaway's face. (Exhibits 1 & 2)  As Officers Pettaway and Barber struggled with Inmate Hope, Officer Pettaway grabbed Inmate Hope around the waist area and brought him to the concrete floor.  Both officers were on top of Inmate Hope trying to bring him under control. Inmate Hope continued struggling including kicking at the officers and attempting to bite them.  (Exhibit 1 & 2)  Officer Dinkins then arrived in the area and Officer Pettaway asked him to get a set of handcuffs.  Officer Pettaway was able to bring Inmate Hope's left arm behind Hope's back.  When Officer Dinkins returned with the handcuffs, Officer Pettaway placed the handcuff on his left hand and Officer Barber placed the handcuff on his right hand.  (Exhibits 1, 2 and 3-Affidavit of Officer Dinkins)  Inmate Hope was then picked up off the floor and brought back up to his feet.  Inmate Hope was bleeding from the nose and mouth.  (Exhibit 2)

Captain Bolling, Lieutenant Clay and Sergeant Smith arrived in the segregation unit almost immediately after the incident.(Exhibit 4-Affidavit of Lieutenant Clay; Exhibit 5-Affidavit of  Captain Bolling and Exhibit 6-Affidavit of Sergeant Smith) Inmate Hope was still cursing loudly and threatening to kill Officer Pettaway.  (Exhibits 4 and 5)  Lieutenant Clay ordered Inmate Hope to calm down and be quiet.  (Exhibit 4) Inmate Hope continued making loud threatening remarks including that if he (Hope) was not transferred from KCF he would kill an officer.  (Exhibits 4 and 5)  Warden Rowell entered the segregation area also during this time frame.  (Exhibit 7-Affdavit of Warden Rowell)  After being questions by Captain Bolling about what happened, Inmate Hope

was escorted to the health care unit to be treated by medical staff.(Exhibits 4, 5, 6 and 8-KCF Incident Report 552, p. 1)

According to the nurse, Inmate Hope was very hostile and angry while in the health care unit. (Exhibit 8,  p. 9)  Inmate Hope had scratches or abrasions on his face, top of head, chest and top of his back.  His nose was bleeding but controlled with pressure.  No stitches were required.  Inmate Hope was given Tylenol and released from the health care unit.  (Exhibit 5 p. 2 and 8, pp. 9-10)

Warden Rowell referred the incident to the investigative unit because of the force used and the allegations by Hope.  Investigator Barfoot determined that Officer Pettaway did not hit or kick Inmate Hope and that Officer Barber did not stomp him with his foot as Hope had alleged.  (Exhibit 7)

Captain Barrett was not at the prison when the incident occurred.  He had no personal involved with the incident.  (Exhibit 9-Affidavit of Captain Barrett)

Angie Baggett is the classification supervisor at KCF.  Inmate Hope is housed in segregation due to his behavior.  (Exhibit 10-Affidavit of Baggett)  Inmate Hope was transferred to KCF to appear at a jury trial in the Northern District of Alabama concerning an incident he was involved in while housed at Limestone Correctional Facility.  (Larry Hope v. Mark Pelzer, et al., CV-96-2968)  On November 8, 2005, the Judge in the case ruled in favor of the correctional defendants and granted judgment in their favor.  (Exhibit 11-Order dated November 8, 2005)  On November 21, 2005, KCF classification notified the transfer division that Inmate Hope no longer was required to be held at KCF.  (Exhibit 10)

Ms. Baggett is a member of the segregation review board that visits each inmate in the segregation unit once a week. During these rounds Hope, has not mentioned his desire to be transferred to a different prison.(Exhibit 10).

## ARGUMENT

### SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. In making that assessment, the court must view the evidence in a light most favorable to the non-moving party and must draw all reasonable inferences against the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The burden of proof is upon the moving party to establish his prima facie entitlement to summary judgment by showing the absence of genuine issues and that he is due to prevail as a matter of law. *See Clark & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991). Once that initial burden has been carried, however, the non-moving party may not merely rest upon his pleading, but must come forward with evidence supporting each essential element of his claim. *See Celotex Corp v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Barfield v. Brierton*, 883 F.2d 923 (11th Cir. 1989). Unless the Plaintiff, who carries the ultimate burden of proving his action, is able to show some evidence with respect to each element of his claim, all other issues of facts become immaterial and the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Bennett v. Parker*, 898 F.2d 1530 (11th Cir. 1990). As the Eleventh Circuit has explained:

> Facts in dispute cease to be "material" facts when the plaintiff fails
> to establish a prima facie case. "In such a situation, there can be

'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." [Citation omitted].  Thus, under such circumstances, the public official is entitled to judgment as a matter of law, because the plaintiff has failed to carry the burden of proof.  This rule facilitates the dismissal of factually unsupported claims prior to trial.

898 F.2d at 1532.

### I. Cruel and unusual punishment claims fail to establish a claim.

Plaintiff alleges that his Eighth Amendment rights were violated due to the use of force against him.  "The Eighth Amendment prohibits the infliction of cruel and unusual punishment. U.S. Const. amend. VIII. The Eight Amendment's proscription of cruel and unusual punishment governs prison officials' use of force against convicted inmates." *Campbell v. Sikes,* 169 F.3d 1353, 1374 (11th Cir.1999).  In considering an Eighth Amendment excessive force claim, we must consider both a subjective and objective component: (1) whether the "officials act[ed] with a sufficiently culpable state of mind," and (2) "if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation." *Hudson v. McMillian,* 503 U.S. 1, 8, 112 S.Ct. 995, 999, 117 L.Ed.2d 156 (1992) (internal quotations omitted)." *Johnson v. Moody*, 206 F.3d 880, 883(11th Cir. 2006)

"To establish a claim for excessive force, the plaintiff must show that (1) the defendants acted with a malicious and sadistic purpose to inflict harm and (2) that more than a de minimis injury resulted.  *See Johnson v. Breeden*, 280 F.3d 1308, 1321 (11th Cir. 2002)." *McReynolds v. Alabama Department of Youth Services*, 204 Fed. Appx 819, 822(11th 2006).  Under Eighth Amendment excessive force claims, the standard is "'whether or not a prison guard's application of force is actionable turns on whether that

force was applied in a good faith effort to maintain or restore discipline or maliciously or sadistically for the very purpose of causing harm.' *Brown v. Smith,* 813 F.2d 1187, 1188 (11th Cir.1987) (internal quotation marks omitted); *see also Campbell,* 169 F.3d at 1374." *Bozeman v. Orum*, 422 F.3d 1265, 1271 (11th Cir. 2005).

In the instant case, it is clear that Officers Pettaway and Barber used only the force necessary to protect themselves and bring Inmate Hope under control. The segregation unit at KCF houses the most dangerous inmates at KCF. Clearly these officers' intent was not to harm Inmate Hope but rather to bring him under control.

The Plaintiff has failed to show an "objective" or subjective violation of the Eighth Amendment or that his injuries were more than de minimis. The Plaintiff's claims do not rise to the level of a constitutional violation.

**II. The plaintiff fails to show a causal connection between his lawsuit and these Defendants' alleged actions.**

In order "to establish a claim for retaliation, Hope must show, inter alia, a causal connection between his protected conduct and the harm complained of. *Farrow v. West,* 320 F.3d 1235, 1248-49 (11th Cir.2003).

In this action, Hope alleges he was retaliated against for a lawsuit he filed against three officers at Limestone Correctional Facility concerning two incidents that occurred in 1995 at Limestone. The verdict in that case in favor of the correctional officials was decided November 8, 2005. (Exhibit 11) The incident where force had to be used against Inmate Hope based on his actions was July 6, 2006, over eleven years after the incidents at Limestone Correctional Facility and seven months after the verdict. Clearly,

Hope has failed to show a causal connection between his activities at Limestone and the Northern District of Alabama and the actions of these correctional officers at KCF.

**III. Verbal Abuse.**

Plaintiff alleges Officer Pettaway cursed him.  Based on several witnesses, it appears that Inmate Hope was the one using profanity.  (Exhibits 2, 3, 4, and 5)  In *Stacy v. Ford*, 554 F Supp 8 (ND Ga., 1982) the District Court held that verbal abuse or threats are insufficient grounds for relief under § 1983 and cited *Collins v. Lundy*, 603 F2d 825 (10th Cir. 1979) and *Ellingburg v. Lucas*, 518 F2d 1196 (8th Cir. 1975).  Assuming arguendo that comments were made,  the claim simply fails to state a cause of action.

**IV.  Plaintiff has no constitutional right to be released from segregation into general population or transferred to a different prison.**

Inmate Hope asserts that he is wrongly being continually housed at KCF.   [A]n inmate does not have a constitutionally protected liberty interest against being transferred to a less agreeable prison." *Moody v. Daggett*, 429 U.S. 78, 88 n. 9, 97 S.Ct. 274, 279 n. 9, 50 L.Ed.2d 236 (1976).  Inmate Hope is properly housed in the Alabama Prison System and he fails to state a constitutional violation simply because he prefers to be housed at a different prison.

Hope also contends that he should not be housed in segregation.  Classification Specialist Baggett has stated that based on Hope's behavior, he is being properly housed in segregation.  (Exhibit 10)  He is visited by the segregation review board, which includes Ms. Baggett, once a week and has never mentioned his status during these reviews. (Exhibit 10).  Furthermore, "[c]onfinement to administrative segregation, under conditions substantially similar to those experienced by the general population of the prison, does not implicate liberty interests."  *Al-Amin v. Donald*, 733 Fed.App. 733, 738

(11th Cir. 2006), *citing, Sandin v. Conner*, 515 U.S. 472(1995)  Hope fails to state a constitutional violation based on being housed in segregation.

## V.   Plaintiff cannot hold Defendants Allen, Rowell, Barrett, Bolling, and Clay liable under the theory of respondeat superior.

Presumably, Plaintiff's claim against Commissioner Allen, Warden Rowell, Captain Barrett, Captain Bolling, and Lieutenant Clay is an attempt to hold them responsible through the concept of respondeat superior, which is not available to a plaintiff under § 1983. *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978).  Absent some allegation that these Defendants knew of, sanctioned, participated in, or were otherwise "affirmatively linked" to the acts here complained of, the complaint is insufficient to state a cause of action under 42 U.S.C. § 1983. *See Gilmere v. City of Atlanta, Ga.*, 774 F.2d 1495, 1504 (11th Cir. 1985) *cert. denied*.  476 U.S. 1115 (1986).  These Defendants are entitled to judgment because they cannot be liable in a Section 1983 case based on respondeat superior.

## VI.  The Defendants are immune from suit.

Plaintiff's suit is barred under the doctrines of qualified immunity. Qualified immunity protects government officials from civil trials and liability when their conduct "violates no clearly established statutory or constitutional rights of which a reasonable person would have known." *Wilson v. Blankenship*, 163 F.3d 1284, 1288 (11th Cir. 1998), quoting *Lassiter v. Alabama A&M Univ., Bd. of Trustees*, 28 F.3d 1146, 1149 (11th Cir. 1994).   As Hope has not shown that the Defendants' acts violated clearly established law, or were done in bad faith, they are immune from suit.

To the extent that the Plaintiff asserts his claims against the Defendants in their official capacities, the claims must fail because the Defendants are entitled to immunity

via the Eleventh Amendment. The Eleventh Amendment to the United States Constitution provides that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state." The Amendment not only bars suits against a state by citizens of another state, but it also bars suits against a state by that state's own citizens. See *Edelman v. Jordan*, 415 U.S. at 663, 94 S. Ct at 1347 and *Hans v. Louisiana*, 134 U.S. 1, 13-15, 10 S. Ct. 504, 33 L.Ed. 842 (1890). All Defendants were acting within the scope of their official duties in this instance on behalf of the State of Alabama. The State of Alabama has not waived its immunity or consented to the filing of such a suit. The Defendants are absolutely immune from suit in this instance. U.S. Const. amend. 11; Art. I, § 14, ALA. Const. (The State of Alabama shall never be made a defendant in any court of law or equity); see also *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (a claim against a state official in his official capacity is a claim against the state).

## CONCLUSION

There are no genuine issues of material fact, and the Defendants are entitled to judgment as a matter of law. The Defendants respectfully request that this Honorable Court dismiss the claims against them.

Respectfully submitted,

TROY KING
Attorney General

/s/ *Ellen Leonard*
Ellen Leonard (LEO008)
Assistant Attorney General

ADDRESS OF COUNSEL:

Office of the Attorney General
11 South Union Street
Montgomery, AL 36130
(334) 353-8699
(334) 242-2433 - fax

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have, this the 17th day of May, 2007, electronically filed the foregoing with the Clerk of Court using the CM/KCF system and served a copy of the foregoing upon the Plaintiff, by placing same in the United States Mail, postage prepaid and properly addressed as follows:

Larry Hope, AIS 181215
Kilby Correctional Facility
P. O. Box 150
Mt Meigs, AL 36057

/s/ *Ellen Leonard*
Ellen Leonard
Assistant Attorney General

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

LARRIE HOPE, #181215          )
    Plaintiff,                )
                              )
VS.                           )          CIVIL ACTION NO. 2:07-CV-210-MHT
                              )
OFFICER ROOSEVELT PETTAWAY, et al.  )
    Defendants.               )

## A F F I D A V I T

Before me, the undersigned authority, a Notary Public in and for said county and State of Alabama

at large, personally appeared Roosevelt Pettaway who, being known to me and being by me first duly

sworn, deposes and says on oath as follows:

My name is Roosevelt Pettaway. I am presently employed as a Correctional Officer with the

Alabama Department of Corrections, Kilby Correctional Facility, Mt. Meigs, Alabama.  I am over

nineteen years of age. I have reviewed the Plaintiff's allegations and I deny that I have violated any of

inmate Hope's rights. I further certify that on July 6, 2006, I, CO Roosevelt Pettaway, was assigned as the

C/D Block-Segregation Rover.  At approximately 4:50p.m., I heard loud yelling coming from B-Block

shower area. I, CO R. Pettaway then proceeded to B-Block to see where the noise was coming from, and

observed inmate Larrie Hope B/181215 inside B-Block shower. I, CO Pettaway then asked inmate Hope

to keep the noise down. Inmate Hope refused to comply, and continued taking loud and making threats,

stating. "I'm going to kill you". I, CO Pettaway called for CO Anthony Barber to assist me in escorting

inmate Hope back to his assigned cell D#18.  While escorting Larrie Hope B/181215 back to his assigned

cell, he (Hope) did turn towards me with his (Hope) fist balled, clutched, and swung at me. I subdued

inmate Hope to the ground by grasping him around the waist. While on the ground, inmate Hope was

yelling, cursing, and spitting while continuing to struggle. I, CO Pettaway yelled for CO Tericus Dinkins,

to get a pair of handcuffs, so that inmate Hope could be restrained. I, then placed his left hand behind his



EXHIBIT
1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

Larrie Hope, 181215
PLAINTIFF

CIVIL ACTION: 2:07 CV 210-T

VS

Richard Allen, Comm., et.al.
     DEFENDANT

## A F F I D A V I T

     Before me, the undersigned authority, a Notary Public in and for said county and State of Alabama at large, personally appeared Anthony Barber who being known to me and being by me first duly sworn, deposes and says on oath as follows:

     My name is Anthony Barber, and I am presently employed as a Correctional Officer, with the Alabama Department of Corrections, Bullock County Correctional Facility, Union Springs, AL. I was employed at Kilby Correctional Facility on the date of 7-6-06 when the incident occurred with Inmate Larrie Hope. I am over nineteen (19) years of age.

     On July 6, 2006, at app. 4:53 PM Inmate Larrie Hope was involved in a physical altercation with officers Anthony Barber, Tericus Dinkins, and Roosevelt Pettaway in the Segregation Unit as reported in Kilby Correctional Facility's Incident Report KCF 06-552.

     On July 6, 2006, I, CO I Anthony Barber, was assigned as the Segregation Rover. At app. 4:47 PM while conducting showers on D-Block, CO I Roosevelt Pettaway called me to the B-Block shower area. When I entered this area I observed Inmate Larrie Hope, BM, 181215, yelling loudly and being belligerent towards CO Pettaway. CO Pettaway gave Inmate Hope several orders to exit the shower area but he refused each one. I heard Inmate Hope state several times to CO Pettaway, "You sissy bitch. I'll kill your ass." At this time I gave Inmate Hope an order to exit the shower area. Inmate Hope continued talking loud/yelling and then complied with my order to exit the shower. CO Pettaway and I then began to escort Inmate Hope out of the B-Block shower area, down the stairs, back to his assigned cell – D-18. As we approached North Control Inmate Hope suddenly turned toward CO Pettaway with his fist clutched and swung towards CO Pettaway's face and

1

EXHIBIT
2

head area.  CO Pettaway ducked under inmate Hope's exposed left arm.  CO Pettaway grabbed Inmate Hope's torso between his waist and shoulder area and wrestled him (Inmate Hope) to the concrete floor. CO Pettaway and I both fell on top of Inmate Hope during the struggle to bring him under control.  While on the floor face down Inmate Hope continued to struggle, kicking and attempting to bite me, CO Barber, and CO Pettaway. CO Pettaway grabbed Inmate Hope's left hand as he continued to struggle and placed Hope's left arm behind his back.  CO Dinkins arrived on the scene and I heard CO Pettaway yell to CO Dinkins to go get a pair of handcuffs out of the Segregation Office. CO Dinkins returned with the cuffs and I placed cuffs on Inmate Hope's right hand and then CO Pettaway placed cuffs on Inmate Hope's left hand.   At no time did I hit, kick or physically assault Inmate Hope in any way and no one else did in my presence.  CO Pettaway and I used only the force that was necessary to place Inmate Hope under control and restrain him.

Capt. Leon Bolling and Lt. Carl Clay appeared on the scene after CO Dinkins radioed them to report to the Segregation Unit.  Inmate Hope continued cursing in a very loud tone and stated that he was going to kill CO Pettaway. Inmate Hope was bleeding from the face area when he was picked up off the concrete floor in front of North Control and was escorted to the hospital area for body chart by Capt Bolling, Lt. Clay and Sgt. Allen Smith. Lt. Carl Clay instructed me and CO Pettaway to report to the Hospital Unit for a body chart to be completed as a result of the struggle we had with Inmate Hope.

I do not have a prior history of assaulting inmates.  I only use the least amount of force necessary to control an inmate and the situation.  Inmate Hope alleges that he is being retaliated against because of the U.S. Supreme Court's ruling of the "Hitching Post" case in 2002. The Hitching Post case has never entered my mind when dealing with Inmate Hope. I treat Inmate Hope as I would any other inmate.  I take all threats from inmates to be serious.

This is the extent of my involvement in the Inmate Larry Hope Incident that occurred on 7-6-06.

CO Anthony Barber
Kilby Correctional Facility at time of the
Incident, but transferred to Bullock Co.
Correctional Facility on 3-17-07.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

Larrie Hope, 181215
PLAINTIFF

CIVIL ACTION: 2:07 CV210-T

VS
Richard Allen, Commissioner, et.al.
DEFENDANT

A F F I D A V I T

Before me, the undersigned authority, a Notary Public in and for said county and State of Alabama at large, personally appeared Tericus Dinkins who being know to me and being by me first duly sworn, deposes and says on oath as follows:

My name is Tericus Dinkins, and I am presently employed as a Correctional Officer with the Alabama Department of Corrections, Kilby Correctional Facility, Mt. Meigs, Alabama. I am over nineteen (19) years of age.

On 7-6-06 was assigned as the A/B Block Segregation Officer. I was passing out legal mail for the Segregation Unit when I heard a loud noise coming from the North Control area. I departed the A/B Block tiers and went toward the North Control area. I observed CO I Roosevelt Pettaway and CO I Anthony Barber attempting to restrain Inmate Larry Hope, BM/181215, while on the concrete floor. CO I Pettaway called for me to get a pair of handcuffs. I went to the Segregation Office and retrieved one (l) pair of handcuffs and immediately returned back to the North Control area where CO Pettaway and CO Barber were still struggling with Inmate Hope on the floor trying to gain control over him. Once I gave the handcuffs to CO Barber he placed the cuffs on Hope's right hand and CO Pettaway placed cuffs on Hope's left hand.

At no time did I, Officer Dinkins, observe Officers Pettaway and Barber use any excessive force on the plaintiff, Larrie Hope.

_Tericus Dinkins COI_
Correctional Officer Tericus Dinkins
Kilby Correctional Facility

State of Alabama
Montgomery County
Sworn to and subscribed before me and under my hand and official seal this the 22nd day of March, 2007.

_Betty Carr_
Betty Carr, Notary Public
My comm. expires 12-17-09.

1

EXHIBIT
3

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| LARRIE HOPE, #181215 | ) | |
|     Plaintiff, | ) | |
| | ) | |
| VS. | ) | CIVIL ACTION NO: 2:07-CV-210-MHT |
| | ) | |
| LT. CARL CLAY  et al. | ) | |
|     Defendants. | | |

## A F F I D A V I T

Before me, the undersigned authority, a Notary Public in and for said county and State of Alabama at large, personally appeared Carl Clay who, being known to me and being by me first duly sworn, deposes and says on oath as follows:

My name is Carl Clay.  I am presently employed as a Correctional Lieutenant with the Alabama Department of Corrections, Kilby Correctional Facility, Mt. Meigs, Alabama.  I am over nineteen years of age.

On July 6, 2006, at approximately 4:53 p.m., Inmate Larrie Hope was involved in a physical altercation inside the Segregation Unit with Officers Roosevelt Pettaway, Tericus Dinkins and Anthony Barber. At approximately 4:54 p.m., I, Lt. Carl Clay responded to a radio call for me to report to the Segregation Unit. I, observed inmate Larrie Hope handcuffed from behind in the Segregation Office bleeding from the nose and mouth area. Inmate Hope was cursing loud and stating that he was going to kill Officer Pettaway. I, Lt. Clay, then ordered inmate Hope to calm down and be quiet. Inmate Hope did not comply with my orders, and continued making threatening remarks towards Officer Pettaway. Inmate Hope also stated that if he (Hope) was not moved from Kilby, he would kill an Officer. I, Lt. Clay then questioned Officer Pettaway concerning the incident. At approximately 5:00p.m., I, Lt. Clay, Captain Leon Bolling and Sgt. Allan Smith escorted inmate hope to Westward for a Medical Evaluation. At approximately 5:15 p.m., inmate Hope was released from Westward and reassigned to E-Block Cell #5. I, Lt. Clay then advised Officers Anthony Barber, Tericus Dinkins and Roosevelt Pettaway to complete a written statement. At approximately 6:35 p.m., I, Lt. Clay completed a Duty Officer's Report and made Statewide Notification. At approximately 8:00p.m., I, Lt. Clay notified the On-Call Investigator, Errick Demus, of the incident. At approximately 8:25 p.m., I. Lt. Clay took (5) five pictures of inmate Hope's injuries.

**EXHIBIT**

**4**

Inmate Hope alleges that I am aware of Officers Pettaway and Barber assaulting behavior in the Segregation Unit.

Inmate Hope also states that the Kilby Correctional Facility has prior history of assaulting behavior by Officers Segregation Unit and I have failed to stop the behavior and discipline the Officers for such behavior. These allegations that inmate Hope has stated is not true. I, Lt. Clay investigated the incident and concluded that inmate Hope, with his fist balled and clutched, did attempt to assault Officer Pettaway by swinging towards him in a threatening manner causing Officers Barber, Pettaway and Dinkins to use a reasonable amount of force to subdue and restrain inmate Hope.

**Lt. Carl Clay**

**Kilby Correctional Facility**

STATE OF ALABAMA        )

MONTGOMERY COUNTY    )

SWORN TO AND SUBSCRIBED BEFORE ME AND GIVEN UNDER MY HAND THIS THE ____ DAY OF _____,2007

NOTARY PUBLIC

My Commission Expires: _____

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

Larrie Hope, 181215
PLAINTIFF

CIVIL ACTION: 2:07 CV 210-T

VS

Richard Allen, Comm., et.al.
     DEFENDANT

### A F F I D A V I T

     Before me, the undersigned authority, a Notary Public in and for said county and State of Alabama at large, personally appeared Leon Bolling who being know to me and being by me first duly sworn, deposes and says on oath as follows:

     My name is Leon Bolling, and I am presently employed as the Correctional Captain, with the Alabama Department of Corrections, Kilby Correctional Facility, Mt. Meigs, Alabama.  I am over nineteen (19) years of age.

     On July 6, 2006, at app. 4:53 PM   Inmate Larrie Hope was involved in a physical altercation with officers Anthony Barber, Tericus Dinkins, and Roosevelt Pettaway in the Segregation Unit.  I responded to a radio call to report to the unit

     I arrived on the scene at app. 4:54 PM.  When I, Capt. Leon Bolling, arrived I observed Inmate Hope handcuffed from behind, bleeding from the face area and constantly making threatening remarks towards CO I R. Pettaway.  Inmate Hope made threatening remarks to me stating that if I, Capt. Bolling, don't get him out of the camp he was going to stick an officer.  At no time did I, Capt. Bolling, allow or see officers Pettaway, Barber, and Dinkins abuse Inmate Hope.  I assisted in escorting Inmate Hope to the hospital area for a body chart.

     Inmate Hope alleges that I am aware of the assaultive behavior of CO I Pettaway and CO Barber in the Segregation Unit, that the segregation officers in the  unit at Kilby have a prior history of assaultive behavior and that I failed to stop this behavior and discipline the officers for such behavior.  These allegations are not true.  The officers assigned to work in the segregation unit are trained to work with and handle the most dangerous, belligerent and unruly behavior of inmates assigned to this unit.  The officers are instructed to use the least amount of force necessary to get the situation and inmate under control which was exactly what COs Pettaway, Barber and Dinkins did.  After reading their statement and talking with officers Pettaway, Dinkins and Barber's and interviewing Inmate Hope I did not see where any excessive force was used by the

EXHIBIT
5

Officers. Inmate Hope swung with a balled, clutched fist at CO Pettaway's head while being escorted out of the shower area.   Both Officers Pettaway and Barber subdued Inmate Hope and pushed him on to the concrete floor where he continued to resist by biting and kicking while facing down. CO Dinkins heard a loud noise coming from the North Control area. CO Pettaway called for CO Dinkins to get a pair of handcuffs. Inmate Hope was handcuffed and restrained by the time I arrived on the unit. Inmate Hope had multiple scratches on the side of his face, an abrasion on both sides of his chest, a scratch on the left lower chin, his nose was bleeding, scratch and superficial cut on top of head, abrasion on right side of his back and his eyes were red. All injuries were minor in nature with no stitches required. The areas were cleaned and Tylenol was given to the inmate for a headache. There were no serious injuries noted by the medical staff. These injuries are not uncommon for an inmate who has to be taken down to the floor while resisting restraints being placed on him for assaulting a Correctional Officer.

I review incidents reports everyday where inmates are "taken-down" while resisting arrest and these injuries are not considered to be abusive or a result of excessive force by an officer.

I deny that I allow Correctional Officers in the Segregation Unit or anywhere in the institution to abuse inmates. If there is any question as to the way an incident is handled by the officers or an inmate makes allegations such as Inmate Hope did against these officers, the Warden of the institution will call for ADOC Investigative and Intelligence Division to conduct an investigation. Warden II Willie Rowell called for an investigation which concluded there was no evidence to indicate Inmate Hope was abused except by the allegations he made in his own statement.


Capt. Leon Bolling
Kilby Correctional Facility


State of Alabama
Montgomery County
Sworn to and subscribed before me and under my hand and official seal this the 19th day of March, 2007.

Betty S. Carr, Notary Public
My comm. expires 12-17-09

2

**IN THE DISTRICT COURT OF THGE UNITED STATES**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| **LARRIE HOPE, #181215,** | ) | |
| **Plaintiff** | ) | |
| **vs.** | ) | **CASE NO. 2:07-CV-210-MHT** |
| | ) | |
| **RICHARD ALLEN, et al.,** | ) | |
| **Defendants** | ) | |

## AFFIDAVIT

I, Allan D. Smith, do hereby make the following affidavit regarding Larrie Hope,

#181215 and the incident that occurred on July 6, 2006. On that date at approximately 4:53 pm, I

was with Lt Carl Clay, when he received a call over the radio to come to the segregation unit. I

accompanied Lt Clay to the unit.

When we arrived at the unit inmate Larrie Hope was in the segregation unit with hand

cuffs behind his back. Shortly thereafter Captain Leon Bolling and Warden Willie Rowell

entered the Segregation Unit. I saw inmate Larrie Hope bleeding from his nose and mouth. He

was cussing and making threats to kill COI Pettaway and COI Barber. Due to the fact that my

superiors were there, I deferred to their judgements and only followed the orders I was given.

At approximately 5:00 pm I escorted inmate Larrie Hope to West Ward for a medical

evaluation. At the Medical unit, inmate Larrie Hope was treated for his injuries and a body chart

was filled out to indicate the injuries.

Prior to this incident I never knew of inmate Larrie Hope. I had just been transferred to

Kilby Correctional Facility in June, 2006. During June, 2006 to the date of this incident, I had to

rotate to each shift to become acquainted with all the different shifts and the operations of those



EXHIBIT
6

shifts. At no time til the filing of this suit was I aware that Inmate Larrie Hope was the "Hitching

post" inmate nor was I aware of any prior history that may or may not be between inmate Larrie

Hope and any other officers.

_____
Allan D. Smith


**STATE OF ALABAMA**              *
**MONTGOMERY COUNTY**             *

     Before me, the undersigned authority, a Notary Public in and for said State and County, personally appeared Allan D. Smith, being by me first duly sworn, deposes and says on oath that the averments contained in the foregoing complaint are true and correct to the best of his knowledge, information and belief.

_____
Allan D. Smith


Sworn to and Subscribed before me this 21st day of _March_, 2007.


_____
**Notary Public**
NOTARY PUBLIC STATE OF ALABAMA AT LARGE
MY COMMISSION EXPIRES: Dec 8, 2009
BONDED THRU NOTARY PUBLIC UNDERWRITERS

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

Larrie Hope, 181215
PLAINTIFF

CIVIL ACTION: 2:07 CV210-T

VS

Richard Allen, Commissioner, et.al.
        DEFENDANT

A F F I D A V I T

Before me, the undersigned authority, a Notary Public in and for said county and State of Alabama at large, personally appeared W. G. Rowell who being know to me and being by me first duly sworn, deposes and says on oath as follows:

My name is W. G. Rowell, and I am presently employed as a Warden II with the Alabama Department of Corrections, Kilby Correctional Facility, Mt. Meigs, Alabama. I am over nineteen (19) years of age.

On 7-6-07 at app. 4:55 PM I entered the Segregation Unit and was informed of the incident involving CO Roosevelt Pettaway, CO Anthony Barber and Inmate Larry Hope. I was informed that Inmate Hope had repeatedly threatened to kill a correctional officer and had swung at CO Pettaway's head and face area with his clutched fist. Inmate Hope was alleging that CO Pettaway had been harassing him for some time and that CO Barber had jumped on him. Inmate Hope did have some minor injuries and I felt that I & I should investigate this incident to clear up the matter if the forced used was proper or not. I sent an E-mail dated 7-10-06 to ADOC Investigation Division requesting an investigation into this matter. Investigator C.P. Barfoot determine that there was no evidence to indicate that Officer Pettaway hit and kicked Inmate Hope or that CO Barber stomped him with his foot as Inmate Hope alleged during this incident. Even Inmate Hope's witness, Inmate DeAndra Lewis, was interviewed by Investigator Barfoot and stated he did not see any officer assault Inmate Hope, but that he did hear Inmate Hope cursing the officers and the officers were using profanity.

I am not aware of Kilby Correctional Facility having a prior history of assaultive behavior by the officers including CO Pettaway or CO Barber in the Segregation Unit toward inmates. Inmates confined in the segregation unit are considered the most

1

EXHIBIT

7

dangerous and volatile of all other inmates in the prison. Officers are expected to take every threat seriously and act accordingly by using the least amount of force necessary to control the inmate and the situation.

The above information is true and correct to the best of my knowledge.

_____
Warden II W. G. Rowell
Kilby Correctional Facility

State of Alabama
Montgomery County

Sworn to and subscribed before me and under my hand and official seal this the 22nd day of March, 2007.

_____
Betty Carr, Notary Public
My comm. expires 12-17-09.

# A F F I D A V I T

Larrie Hope, 181215
**PLAINTIFF**

**CIVIL ACTION: 2:07 CV210-T**

**VS**
**Richard Allen, Commissioner, et.al.**
       **DEFENDANT**

## STATE OF ALABAMA
### MONTGOMERY COUNTY

    I, **Bobby Barrett**, hereby certify and affirm that I am a Correctional Captain at Kilby Correctional Facility; that I am one of the custodians of the inmate institutional records at this institution; that the attached documents are true, exact, and correct photo-copies of certain original documents maintained here in the institutional files; and that I am over the age of nineteen (19) years and am competent to testify to the aforesaid documents and matters stated therein.

    I further certify and affirm that said documents are maintained in the usual and ordinary course of business at the Kilby Correctional Facility; and that said documents (and the entries therein) were made at, or reasonably near the time that such acts, events, and transactions referred to therein are said to have occurred.

    This, I do hereby certify and affirm to on the  22nd day of March, 2007.

                        **Bobby Barrett, Correctional Captain**
                        **Kilby Correctional Facility**

State of Alabama
Montgomery County

    Sworn to and subscribed before me and under my hand and official seal this the 22nd day of March, 2007.

                    **Betty S. Carr, Notary Public**
                    **My comm. expires 12-17-09.**

3

**EXHIBIT
8**

+STATE OF ALABAMA
DEPARTMENT OF CORRECTIONS

# INCIDENT REPORT

| 1. Institution: **Kilby Correctional Facility** | 2. Date: **July 6, 2006** | 3. Time: **4:53pm** | 4. Incident Number: KCF **06-552 B**   Class Code: |
|---|---|---|---|
| 5. Location Where Incident Occurred: **Segregation Unit** | | 6. Type of Incident:#29- Assault On A Person(s) Associated With The ALDOC/ Use of Force and #44-Threats | |
| 7. Time Incident Reported: **4:55pm** | | 8. Who Received Report: **Warden Willie Rowell** | |

| 9. Victims: | Name | | AIS |
|---|---|---|---|
| a | **Roosevelt Pettaway** | No. | **COI** |
| b | **Anthony Barber** | No. | **COI** |
| c | | No. | |

| 10. Suspects: | Name | | AIS | 11. Witnesses: | Name | | AIS |
|---|---|---|---|---|---|---|---|
| a | **Larrie Hope** | No. | **B/181215S** | a | **Tericus Dinkins** | No. | **COI** |
| b | | No. | | b | | No. | |
| c | | No. | | c | | No. | |
| d | | No. | | d | | No. | |
| e | | No. | | e | | No. | |
| | | | | f | | No. | |
| | | | | g | | No. | |

**PHYSICAL EVIDENCE:**

12. Type of Evidence:
N/A

13. Description of Evidence:
N/A

14. Chain of Evidence:
a N/A
b
c
d
e

15. Narrative Summary:

On July 6, 2006, at approximately 4:53 p.m., Lt. Carl Clay was called to report to Segregation via hand held radio. At approximately 4:54 p.m., Captain Leon Bolling, Lt. Carl Clay and Sgt. Allan Smith entered the Segregation. Lt. C. Clay observed inmate Larrie Hope B/181215S handcuffed from behind-inside the Segregation Office, bleeding from his (inmate Hope) nose and mouth area. Inmate Hope was cursing loud and stating that he (Hope) was going to kill COI Roosevelt Pettaway. Captain L. Bolling and Lt. C. Clay ordered inmate Hope to calm down and be quiet. Inmate Hope did not comply with Captain L. Bolling and Lt. C. Clay but continued to make threating remarks towards COI R. Pettaway. Inmate Hope also stated to Captain L. Bolling that if he (Captain Bolling) do not move him out of the camp, he was going to kill an Officer. Captain Bolling instructed inmate Hope to sit down in the chair and be quiet. Inmate Hope complied with Captain Bolling instructions. Captain Bolling asked inmate Hope what happened. Inmate Hope stated that Officer Pettaway and COI Anthony Barber had jumped on him. Lt. C. Clay then questioned COI Pettaway about the alleged statement that inmate Hope had made to Captain Bolling. COI Pettaway stated that he heard loud yelling on the B-Block shower area and he went up to B-Block to see what was the problem.

Distribution:   ORIGINAL AND ONE (1) COPY to Central I & I Division         COPY to Deputy Commissioner of Operations (Class A and B ONLY)
                COPY to Institutional File                                   COPY to Central Records Office

ADOC Form 302-A – June 1, 2005

STATE OF ALABAMA
DEPARTMENT OF CORRECTIONS

# INCIDENT REPORT/DUTY OFFICER REPORT
## CONTINUATION

| Institution: | Incident Number: | Class Code |
|---|---|---|
| **Kilby Correctional Facility** | **KCF-** *06-552* | *B* |

| Date: | Type of Incident: #29-Assault on a Person(s) Associated With |
|---|---|
| **July 6, 2006** | **ALDOC/Use of Force/ #44-Threats** |

Narrative Summary (Continued) Page No. 2

Inmate Hope was in the shower area making the noise. I asked inmate Hope to keep the noise down. That's when inmate Hope stated, "Fuck you Nigga, you don't know who I am?" Then I walked back down the to get Officer Barber to assist me in escorting inmate Hope back to his cell. As Officer Barber and I was escorting inmate Hope back to his cell, inmate Hope continued talking loud and making idol threats, "I'm going to kill you." Inmate Hope suddenly turned towards Officer Barber and I with his fist balled and clutched and swung at me. Officer Barber and I had to restrain inmate Hope by using force. At approximately 4:55 p.m., Warden Willie Rowell entered the Segregation Unit and was informed of the incident. At approximately 5:00 p.m., inmate Hope was escorted to Westward by Captain L. Bolling, Lt. C. Clay and Sgt. Allan Smith for a Medical Evaluation, where LPN Detra Burns completed a Medical Report (See Attached Medical Report). At approximately 5:15 p.m., inmate Hope was released from Westward and reassigned to E-Block Cell #5. Lt. C. Clay advised the Segregation Officers, A. Barber, R. Pettaway and Tericus Dinkins to complete a written statement (See Attached) At approximately 6:35 p.m., Lt. C. Clay E-mailed a Duty Officer's Report and made Statewide Notification (See Attached). At approximately 8:00 p.m., Lt. C. Clay spoke with the On Call Investigator, Errick Demus. Investigator Demus instructed Lt. C. Clay to photograph inmate Hope's injuries. At approximately 8:25 p.m., Lt. C. Clay took (5) five pictures of inmate Hope's injuries (See Attached Pictures) At approximately 8:30 p.m., COI's Pettaway and Barber were instructed by Lt. C. Clay to report to Westward for a Medical Evaluation where LPN D. Burns completed a Body Chart (See Attached). Inmate Hope will receive disciplinaries for Rule Violations #29-Assault on Person(s) Associated With The ALDOC and #44-Threats. No further action taken at this time.

_Lt. Carl Clay_

**Lt. Carl Clay**

KOF06 – 552

## STATEMENT

On July 6, 2006, I COI Roosevelt Pettaway was assigned as the C/D Block Rover. At approximately 4:50 p.m., I COI R. Pettaway heard loud yelling in the B-Block shower area. I then proceeded to walk toward B-Block to see what was the loud noise. As I approached the top of the stairs, I observed that the noise was coming from inmate Larrie Hope B/181215 inside B-Block shower. I asked him to keep the noise down, he (inmate Hope) stated, "Fuck you Nigga, you don't know who I am". Inmate Hope has made idol threats in the past to which I am accustomed too. At no time did I think he was a threat to my safety. I then walked down the stairs to get Officer Anthony Barber to assist me in escorting inmate Hope out of the shower to his assigned cell. At approximately 4:52 p.m., I, Officer Pettaway gave inmate Hope an order to come out of the shower on B-Block, so that he could be escorted back to D-Block. Inmate Hope complied and exited the shower area. Inmate Hope continued talking loud, as I and COI A. Barber escorted inmate Hope down the stairs, he (inmate Hope) continued talking loud and making idol threats stating, "I'm going to kill you." Officer Barber and I entered the bottom floor near North Control enroute to D-Block, inmate Hope then turned towards me with his fist balled and clutched and swung at me. As he swung at my facial area, I, COI R. Pettaway and COI A. Barber subdued him to the ground by grabbing inmate Hope around the waist. While on the ground, I yelled for COI Tericus Dinkins the A/B Block Officer to get a pair of handcuffs, so that we could restrain inmate Hope. I then placed his left hand behind his back and put the cuff on him, COI A. Barber put the right hand behind his back and placed the cuff on him. While inmate Hope was on the ground he was yelling, cursing, spitting and making idol threats, while continuing struggle. At approximately 4:53 p.m., I then told COI T. Dinkins to call for Lt. Carl Clay. At approximately 4:54 p.m., Captain Leon Bolling, Lt. C. Clay, Sgt. Allan Smith arrived in the Segregation Unit. Inmate hope continued to make threats on my life while in the Segregation Office. Inmate Hope was then escorted to Westward by Lt. Carl Clay and Sgt. A. Smith.

(End of Statement)

_Roosevelt Pettaway, COI_
COI Roosevelt Pettaway

*KCF 06-552*

## STATEMENT

On July 6, 2006, I COI Anthony Barber was assigned as the Segregation Rover.
At approximately 4:47 p.m., while conducting showers on D-Block, COI Roosevelt Pettaway summoned me to the B-Block shower area. There, COI A. Barber observed inmate Larrie Hope B/181215 acting loud and belligerent towards COI Roosevelt Pettaway. Officer Pettaway gave inmate Hope several orders to exit the shower area. Inmate Hope continued taking loud. Inmate Hope stated several times to COI Pettaway, "You sissy bitch, I'll kill your ass. I also gave inmate Hope an order to exit the shower, inmate Hope continued talking loud. Inmate Hope then complied with the order to exit the shower. Officer Barber and Officer Pettaway then began escorting inmate Hope out of the B-Block shower area, down the stairs, back to his assigned cell-Delta-18, as COI Barber and COI Pettaway was escorting Inmate Hope near North Control, then he suddenly turned toward COI Pettaway with his fist clutched and swung towards COI Pettaway face and head area. Officer Pettaway ducked under inmate Hope's exposed left arm, then grabbed inmate Hope torso between his waist and shoulder area and wrestled him (inmate Hope) to the floor. While on the floor inmate Hope continued to struggle, while kicking and attempting to bite at COI A. Barber and Pettaway. COI Pettaway then grabbed inmate Hope left hand (as he continued to struggle) and placed it behind his back area, COI Barber then placed cuffs on inmate Hope's right hand, then COI Pettaway placed cuffs on inmate Hope's left hand. Captain Leon Bolling , Lt. Carl Clay arrived on the scene. At approximately 5:02 p.m., inmate Hope was escorted to the Health Care Unit.

(End Of Statement)


_____
**COI Anthony Barber**

## STATEMENT

On July 6, 2006, at approximately 4:45 p.m., COI Tericus Dinkins was assigned to A/B Block as the A/B Block Officer. I COI T. Dinkins was passing out legal mail for Segregation when I heard a loud noise coming from the North Control area. I, COI T. Dinkins came off A/B Block and saw COI Roosevelt Pettaway and COI Anthony Barber attempting to restrain inmate Larrie Hope B/181215. COI Roosevelt Pettaway called for me to get a pair of handcuffs. I, COI T. Dinkins went to the Segregation Office and retrieved (1) pair of handcuffs, and went back to the area and gave the handcuffs to COI A. Barber. COI's A. Barber and R. Pettaway then took inmate Hope to the Segregation Office. At approximately 4:52 p.m., COI T. Dinkins called Lt. Carl Clay to the Segregation Office.

(End Of Statement)

COI Tericus Dinkins

KCF 06-552

## STATEMENT

I, Larrie Hope B/181215 was in the up-stairs shower on A/B side when Officer Pettaway and Officer Barber came in and made me get out of the shower. As I was going back to my Cell, Officer Pettaway and Officer Barber jumped me, since being here at Kilby Officers Pettaway and Barber has made threats concerning my safety.

(End of Statement)

_Larrie Hope_

Larrie Hope B/181215

*RCF 06-552*

# Alabama Department of Corrections
## Duty Officer Report

Class Code __B__

Type of Incident: __USE OF FORCE__    Institution: __Kilby Correctional Facility__

Victim(s): __LARRIE HOPE__    AIS # __181215 S__    R/S __B/M__    DOB __07/05/1956__

Suspects(s): _____    AIS # _____    R/S _____    DOB _____

_____    AIS # _____    R/S _____    DOB _____

_____    AIS # _____    R/S _____    DOB _____

_____    AIS # _____    R/S _____    DOB _____

Sentenced From: __TUSCALOSSA COUNTY__    Date of Sentence: __01/04/2002__

Offense(s): __ASSAULT II ,ROBBERY I,__    Length of Sentence: __LIFE__
__RAPE I & BURGLARY I__

Minimum Release Date: __00/00/0000__

Date: __07/06/06__    Time: __5:00 p.m.__    Location: __Kilby Seg Unit.__

Brief Narrative:
__On 07-06-06, at approximately 4:45 p.m., Inmate Larrie Hope B/181215S was in a physical altercation__
__with two Segregation Officers.__

(Use ADOC Form 302-B for Continuation of narrative)

Official Reporting: __Lt. CARL CLAY__    Date: __7/6/06__    Time: __6:35 p.m.__

Receiver of Report: _____

Deputy Comm. of Operations: __Greg Lovelace__    Date: __07/06/06__    Time: __6:35 p.m.__

Inst. Coordinator: __Roy Hightower__    Date: __07/06/06__    Time: __6:35 p.m.__

Investigations: __Errick Demus__    Date: __07/06/06__    Time: __6:35 p.m.__

Public Information Officer: __Brian Corbett__    Date: __07/06/06__    Time: __6:35 p.m.__

| Deleted: <sp> |
| Deleted: Inmate Bolander was sent to Jackson hospital. |
| Deleted: |
| Deleted: |
| Deleted: |
| Deleted: |
| Deleted: |
| Deleted: |
| Deleted: |
| Deleted: |
| Deleted: |
| Deleted: |

**EMERGENCY**

| ADMISSION DATE | TIME | ORIGINATING FACILITY | | |
|---|---|---|---|---|
| 07 / 06 / 06 | 502 PM | ☐ SIR ☐ PDL ☐ ESCAPEE ☐ ____ | ☐ SICK CALL ☐ EMERGENCY | ☐ OUTPATIENT |

ALLERGIES: NKDA

| CONDITION ON ADMISSION |
|---|
| ☐ GOOD ☐ FAIR ☐ POOR ☐ SHOCK ☐ HEMORRHAGE ☐ COMA |

VITAL SIGNS: TEMP 98.4 ORAL RECTAL    RESP. 24    PULSE 112    BP 146/100    RECHECK IF SYSTOLIC <100> 90

NATURE OF INJURY OR ILLNESS

Body chart per Doc

Alteration



ABRASION // CONTUSION # BURN XX XX FRACTURE Z Z LACERATION / SUTURES

Red eye   Red eyes   cuts + bruise   Abrasion   Scratch   Bruise

PROFILE RIGHT OR LEFT

RIGHT OR LEFT

PHYSICAL EXAMINATION

Inmate escorted to w/s by officers - face Bloody. Scratches multiple on (L) side & face, eyes (Both) red. - very Hostile + angry Abrasion on Both sides & chest + bruise on (L) lower Chin — nose bleeding - controlled c pressure — slight indentation noted on (L) side & nose - Scratches + cuts noted on top & head — Abrasion on (R) side & Back - C/O slight headache Released back to DOC

ORDERS / MEDICATIONS / IV FLUIDS — Areas cleaned c N/S — P. Tylenol 500mg x po Now for headache

| | TIME | BY |
|---|---|---|

DIAGNOSIS: Alteration

INSTRUCTIONS TO PATIENT

| DISCHARGE DATE | TIME | RELEASE / TRANSFERRED TO | CONDITION ON DISCHARGE | |
|---|---|---|---|---|
| 7 / 6 / 06 | 515 PM | ☑ DOC ☐ AMBULANCE ☐ | ☐ SATISFACTORY ☑ FAIR | ☐ POOR ☐ CRITICAL |

NURSE'S SIGNATURE: Delta Dunslow DATE 7/6/06

PHYSICIAN'S SIGNATURE (L) 7/10/06    DATE    CONSULTATION

INMATE NAME (LAST, FIRST, MIDDLE): Holt, Larry

| DOC# | DOB | R/S | FAC. |
|---|---|---|---|
| 181215 | 7/5/56 | B/M | Kilby |

PHS-MD-70007    (White - Record Copy, Yellow - Pharmacy Copy)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

Larrie Hope, 181215
PLAINTIFF

                                        CIVIL ACTION: 2:07 CV210-T

VS
Richard Allen, Commissioner, et.al.
        DEFENDANT

## A F F I D A V I T

Before me, the undersigned authority, a Notary Public in and for said county and State of Alabama at large, personally appeared Bobby Barrett who being know to me and being by me first duly sworn, deposes and says on oath as follows:

My name is  Bobby Barrett, and I am presently employed as A Correctional Captain with the Alabama Department of Corrections, Kilby Correctional Facility, Mt. Meigs, Alabama.  I am over nineteen (19) years of age.

Inmate Hope alleges in his complaint that I am "aware of the assaultive behavior of CO I Pettaway and CO I Barber in the Segregation/Facility Unit and Kilby Correctional Facility has a prior history of assaultive behavior by officers in the segregation unit and have failed to stop this behavior nor discipline officers for this such behavior nor request they surrender their badges of duties".  This is not true.

All Correctional Officers are trained to use the least amount of force possible to control an inmate or a situation.  I was not present when the incident occurred on July 6, 2006, regarding Inmate Hope, CO Is Pettaway, Barber and Dinkins in the segregation unit. I was notified of the incident by phone on 7-6-07 at app. 5:15 PM.

On 7-7-06 at app. 8:30 AM when I reported for duty at Kilby I began to read all the reports and statements regarding the incident involving Inmate Hope from 7-6-07.  I interviewed Lt. Carl Clay, CO I Anthony Barber and CO I Tericus Dinkins regarding this incident with Inmate Hope.  They explained to me that Inmate Hope was unrestrained in the shower and exited the shower cursing and threatening the officers.  Inmate Hope had threatened to "kill an officer" and took a swing at CO Pettaway's  face and head while being escorted back to his assigned cell with his fist balled up and clutched.

Based on my review of the incident report, medical report and statements from all

1

EXHIBIT

9

officers involved, it is my opinion that the Correctional Officers used only the force that was necessary to place Inmate Hope under control. I did recommend in my statement that the matter should be turned over to I & I (ADOC Investigative Division) because of Inmate Hope's comments that Officer Pettaway is always messing with him and the fact that Inmate Hope had threatened to kill an officer.

I am not aware of Kilby Correctional Facility having a prior history of assaultive behavior by the officers nor CO Pettaway or CO Barber in the Segregation Unit at Kilby having assaultive behavior toward inmates. Inmates confined in the segregation unit are considered the most dangerous and assaultive than all other inmates in the prison. Officers are expected to take every threat seriously and act accordingly.

The above information is true and correct to the best of my knowledge.

_____
Correctional Captain Bobby Barrett
Kilby Correctional Facility

State of Alabama
Montgomery County

Sworn to and subscribed before me and under my hand and official seal this the 22nd    day of  March, 2007.

_____
Betty Carr, Notary Public
My comm. expires 12-17-09.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

Larrie Hope
**PLAINTIFF**

CIVIL ACTION: 2:07 CV210-T

**VS**
Richard Allen, Commissioner, et.al.
      **DEFENDANT**

### A F F I D A V I T

Before me, the undersigned authority, a Notary Public in and for said county and State of Alabama at large, personally appeared Angie Baggett who being know to me and being by me first duly sworn, deposes and says on oath as follows:

My name is  Angie Baggett, and I am presently employed as Classification Specialist Supervisor with the Alabama Department of Corrections, Kilby Correctional Facility, Mt. Meigs, Alabama. I am over nineteen (19) years of age.

Inmate Larrie Hope (AIS 181215S) was transferred to Kilby Correctional Facility from Holman Prison on October 27, 2005 for the purpose of a scheduled appearance before the United States District Court (Northern District of Alabama).  This transfer was directed by the Transfer Division (TAS) of the Alabama Department of Corrections (ADOC) and was therefore not a classification related movement.  Inmate Hope was transferred to Kilby in administrative segregation due to prior institutional behavior that warranted such placement. Thus, inmate Hope was placed in administrative segregation status at Kilby. Inmate Hope appeared in Federal Court in Birmingham on November 7, 2005.  On November 21, 2005, Classification personnel at Kilby Correctional Facility completed the necessary documentation to ADOC TAS indicating that inmate Hope was finished with court and ready for return to his institution of origin, which was Holman Prison.  This documentation was resent to ADOC TAS on February 4, 2006.  To date, inmate Hope has not been returned to Holman Prison.

Since inmate Hope's arrival at Kilby on October 27, 2005,  his behavior has demonstrated that he is a threat to the secure operation of Kilby Correctional Facility and thus, his placement in general population would place both staff and



EXHIBIT
10

other inmates at risk.  Examples of such behavior include threatening and being insubordinate to staff on January 8, 2006, assaulting staff on July 6, 2006, threatening to kill staff on July 7, 2006, threatening to kill staff with a prison made knife, being insubordinate to staff and possessing contraband  December 15, 2006.  Inmate Hope's behavior has lead to his receipt of seven major disciplinary infractions since arriving at Kilby.  The decision to continue housing inmate Hope in administrative segregation is not willing indifference or neglect on my part; moreover, it is a consequence of the behavior and actions of inmate Hope that continue to demonstrate that he is not appropriate for placement in general inmate population.  In fact, inmate Hope is within classification criteria for a review for an increase in custody and more restricted placement.

I have never told inmate Hope that he has an enemy in Kilby's population, or any other facility for that matter.  Inmate Hope does not have any documented enemies within the ADOC.  It is not within the scope of my job to document anything on segregation cards as inmate Hope alleges.

Within the scope of my job, I make weekly segregation rounds on Fridays and have been doing so since February 2006.  Inmate Hope has never personally addressed me or asked me any questions regarding his status.

Inmate Hope has remained on transfer status since November 21, 2005.  I have no control over when TAS makes any movement to other facilities.  As of this date, Inmate Hope's behavior justifies his continued placement in administrative segregation status.

Angie Baggett, Classification Supervisor
Kilby Correctional Facility


State of Alabama
Montgomery County
Sworn to and subscribed before me and under my hand and official seal this the 11th day of May, 2007.

Betty S. Garr, Notary Public
My comm. expires  12-17-09

FILED

2005 Nov-08  PM 04:03
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **LARRY HOPE,** | ] | |
| | ] | |
| **Plaintiff,** | ] | |
| | ] | |
| **v.** | ] | **CV-96-BE-2968-S** |
| | ] | |
| **MARK PELZER, ET AL.,** | ] | |
| | ] | |
| **Defendants.** | ] | |
| | ] | |

**ORDER**

This case came before the court for trial.  Upon the completion of Plaintiff's case in chief,

the Defendants moved for Judgment as a Matter of Law pursuant to Fed. R. Civ. P. 50(a).  For the

reasons set forth on the record at the November 7, 2005 hearing, and summarized below, the court

finds that Defendants' Motion is due to be **GRANTED**.

To prevail on an Eighth Amendment challenge, a prisoner must satisfy both an objective and

subjective test.  *Chandler v. Crosby*, 379 F.3d 1278, 1289-90 (11th Cir. 2004).  Under the objective

analysis, the "prisoner must prove that the condition he complains of is sufficiently serious to violate

the Eighth Amendment."  *Id*. at 1289.  Pursuant to the subjective analysis, the prisoner must show

that the prison officials acted with "deliberate indifference" with regard to the condition at issue.

*Id*.  A prison official acts with "deliberate indifference" when he is "aware of facts from which the

inference could be drawn that a substantial risk of serious harm exists, and he must also draw that

inference."  *Id*. at 1290.

Although the use of the restraining bar in this case constituted cruel and unusual punishment,

as found by the Supreme Court in *Hope v. Pelzer*, 536 U.S. 730, 737-78 (2002), Plaintiff failed to

**EXHIBIT**

*tabbies*

11


meet his burden of proof as to the individual liability of the three named defendants. Specifically, Plaintiff offered no evidence to prove that any of the individual defendants acted with deliberate indifference, or were aware of a substantial risk of serious harm. Merely showing that an Eighth Amendment violation occurred, without more, is not sufficient to impose liability on the defendants in this case.

Accordingly, this court has no choice but to find that Defendants' Motion is due to be **GRANTED**. Plaintiff's claims against Defendants are, therefore, **DISMISSED with prejudice**.

Costs are taxed against Plaintiff.

DONE and ORDERED this 8th day of November, 2005.


KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE

2

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTICT OF ALABAMA
NORTHERN DIVISION

LARRIE HOPE, #181215        )
    Plaintiff,        )
            )
VS.        )        CIVIL ACTION NO. 2:07-CV-210-MHT
            )
OFFICER ROOSEVELT PETTAWAY, et al.   )
    Defendants.

## A F F I D A V I T

Before me, the undersigned authority, a Notary Public in and for said county and State of Alabama

at large, personally appeared Roosevelt Pettaway who, being known to me and being by me first duly

sworn, deposes and says on oath as follows:

My name is Roosevelt Pettaway. I am presently employed as a Correctional Officer with the

Alabama Department of Corrections, Kilby Correctional Facility, Mt. Meigs, Alabama.  I am over

nineteen years of age. I have reviewed the Plaintiff's allegations and I deny that I have violated any of

inmate Hope's rights. I further certify that on July 6, 2006, I, CO Roosevelt Pettaway, was assigned as the

C/D Block-Segregation Rover.  At approximately 4:50p.m., I heard loud yelling coming from B-Block

shower area. I, CO R. Pettaway then proceeded to B-Block to see where the noise was coming from, and

observed inmate Larrie Hope B/181215 inside B-Block shower. I, CO Pettaway then asked inmate Hope

to keep the noise down. Inmate Hope refused to comply, and continued taking loud and making threats,

stating. "I'm going to kill you". I, CO Pettaway called for CO Anthony Barber to assist me in escorting

inmate Hope back to his assigned cell D#18.  While escorting Larrie Hope B/181215 back to his assigned

cell, he (Hope) did turn towards me with his (Hope) fist balled, clutched, and swung at me. I subdued

inmate Hope to the ground by grasping him around the waist. While on the ground, inmate Hope was

yelling, cursing, and spitting while continuing to struggle. I, CO Pettaway yelled for CO Tericus Dinkins,

to get a pair of handcuffs, so that inmate Hope could be restrained. I, then placed his left hand behind his



EXHIBIT

1

back and cuffed him, CO A. Barber placed the right hand behind his back and cuffed him. At no time did I choke, punch or place a belt around the neck of inmate Larrie Hope.

_Roosevelt Pettaway CO1_

CO Roosevelt Pettaway

Kilby Correctional Facility

STATE OF ALABAMA          )

MONTGOMERY COUNTY    )

SWORN TO AND SUBSCRIBED BEFORE ME AND GIVEN UNDER MY HAND THIS THE _9th_ DAY OF _March_, 2007

_Cynthia M Butler_

NOTARY PUBLIC

My Commission Expires: _12-15-2009_