IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

LARRIE HOPE, #181215,              )
                                   )
        Plaintiff,                 )
                                   )
v.                                 )        CASE NO. 2:07-CV-210-MHT
                                   )              [WO]
                                   )
RICHARD ALLEN, et al.,             )
                                   )
        Defendants.                )

# RECOMMENDATION OF THE MAGISTRATE JUDGE

## I.  INTRODUCTION

In this 42 U.S.C. § 1983 action, Larrie Hope ["Hope"], a state inmate, challenges the constitutionality of actions taken against him during his incarceration at the Kilby Correctional Facility ["Kilby"]. The complaint, as amended, lists Richard Allen, Commissioner of the Alabama Department of Corrections; W. G. Rowell, the warden of Kilby; correctional officers Bolling, Barrett, Clay, Smith, Pettaway, Barber and Dinkins;[1] and Angie Baggett, a classification specialist supervisor, as defendants in this cause of action. Specifically, Hope complains that defendants Pettaway and Barber used excessive force against him on July 6, 2006.  He alleges that defendant Dinkins witnessed this use of

---

[1]Although Hope initially identifies this defendant as officer Denkins, the defendants advise that his correct name is Dinkins. Hope, in documents filed subsequent to the complaint, also refers to this individual as officer Dinkins.  For purposes of this Recommendation and in the interest of clarity, the court will use the correct name of this defendant.

force and failed to intervene.  Hope also contends defendants Allen, Rowell, Bolling, Barrett, Clay and Smith are supervisors who should be held responsible for the acts of their subordinates.  Hope likewise challenges the constitutionality of his classification level while confined at Kilby and the conditions to which he was subjected due to his classification level.  Finally, Hope asserts that the excessive force and classification decision occurred in retaliation for his filing a previous civil action challenging the prison system's use of the hitching post.  Hope seeks declaratory relief and monetary damages for the alleged violations of his constitutional rights.

The defendants filed a special report and supporting evidentiary materials addressing each of Hope's claims for relief.  Pursuant to the orders entered in this case, the court deems it appropriate to treat the special report as a motion for summary judgment.  *Order of May 18, 2007 - Court Doc. No. 18*.  Thus, this case is now pending on the defendants' motion for summary judgment.  Upon consideration of the motion, the evidentiary materials filed in support thereof, and the plaintiff's response in opposition to this motion, the court concludes that the defendants' motion for summary judgment is due to be granted in part and denied in part.

## II.  STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as

2

a matter of law.'" *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation to former rule omitted); Fed.R.Civ.P. Rule 56(c) (Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.").[2]   The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.  *Id.* at 322-324.

The defendants have met their evidentiary burden. Thus, the burden shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine issue material to each of his claims for relief exists.  *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed.R.Civ.P. 56(e)(2) ("When a motion for summary judgment is properly made and supported, an opposing party may not rely merely

---

[2] Effective December 1, 2007, "[t]he language of Rule 56 [was] amended ... to make the rule[] more easily understood and to make style and terminology consistent throughout the rules.  These changes ... are stylistic only." Fed.R.Civ.P. 56 Advisory Committee Notes.  Thus, although Rule 56 underwent stylistic changes, its substance remains the same and, therefore, all cases citing the prior rule remain equally applicable to the current rule.

on allegations or denials in its own pleading; rather, its response must ... set out specific facts showing a genuine issue for trial."). A genuine issue of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263.

> In civil actions filed by inmates, federal courts
>
> must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530, 126 S.Ct. 2572, 2578, 165 L.Ed.2d 697 (2006) (internal citation omitted). Consequently, to survive the defendants' properly supported motion for summary judgment, Hope is required to produce "sufficient [favorable] evidence" which would be admissible at trial supporting his claims of constitutional violations. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); Rule 56(e)(1), *Federal Rules of Civil Procedure*. "If the evidence [on which the nonmoving party relies] is merely colorable ... or is not significantly probative ... summary judgment may be granted." *Id*. at 249-250. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)." *Walker v. Darby*, 911 F.2d 1573, 1576-1577 (11th Cir. 1990). Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine issue

4

of material fact and, therefore, do not suffice to oppose a motion for summary judgment. *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001); *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (a plaintiff's "conclusory assertions ..., in the absence of [admissible] supporting evidence, are insufficient to withstand summary judgment."); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (grant of summary judgment appropriate where inmate produces nothing beyond "his own conclusory allegations" challenging actions of the defendants); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("mere verification of party's own conclusory allegations is not sufficient to oppose summary judgment...."). Hence, when a plaintiff fails to set forth specific facts supported by requisite evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (if on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate).

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Property Located at 5800 SW 74th Avenue, Miami, Florida*, 363 F.3d 1099, 1101 (11th Cir. 2004). What is material is determined by the

5

substantive law applicable to the case.  *Anderson*, 477 U.S. at 248; *Lofton v. Secretary of the Department of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment.").  "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case."  *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted).  To demonstrate a genuine issue of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts....  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986).  In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates that there is no genuine issue of material fact and that the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper.  *Celotex*, 477 U.S. at 323-324 (summary judgment appropriate where pleadings, evidentiary materials and affidavits before the court show there is no genuine issue as to a requisite material fact); *Waddell*, 276 F.3d at 1279 (to establish a genuine issue of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor).

 Although factual inferences must be viewed in a light most favorable to the

nonmoving party, in this case the plaintiff, and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine issue of material fact.  *Beard*, 548 U.S. at 525, 126 S.Ct. at 2576; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990).  Thus, the plaintiff's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case.  In the present cause of action, Hope  has demonstrated a genuine issue of material fact in order to preclude entry of summary judgment on his excessive force claim against defendants Pettaway, Barber and Dinkins in their individual capacities.  The defendants are, however, entitled to summary judgment on all of Hope's remaining claims for relief.

## III.  DISCUSSION

### A.  Absolute Immunity

With respect to any claims lodged against the defendants in their official capacities, they are immune from monetary damages.  Official capacity lawsuits are "in all respects other than name, ... treated as a suit against the entity."  *Kentucky v. Graham*, 473 U. S. 159, 166 (1985).  "A state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984), or Congress has abrogated the state's immunity, *see Seminole Tribe v. Florida*, [517 U.S. 44, 59], 116 S.Ct. 1114, 1125, 134 L.Ed.2d 252 (1996).  Alabama has not waived its Eleventh Amendment

immunity, *see Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (citations

omitted), and Congress has not abrogated Alabama's immunity. Therefore, Alabama state

officials are immune from claims brought against them in their official capacities."

*Lancaster v. Monroe County*, 116 F.3d 1419, 1429 (11th Cir. 1997).

In light of the foregoing, it is clear that the defendants are state officials entitled to

sovereign immunity under the Eleventh Amendment for claims seeking monetary damages

from them in their official capacities. *Lancaster*, 116 F.3d at 1429; *Jackson v. Georgia

Department of Transportation*, 16 F.3d 1573, 1575 (11th Cir. 1994). Thus, the defendants

are entitled to absolute immunity from any claims for monetary relief presented against

them in their official capacities. *Parker v. Williams*, 862 F.2d 1471 (11th Cir. 1989).

### B. Retaliation

Hope complains that the incident of alleged excessive force and the assignment of

an unfavorable classification level while at Kilby occurred in retaliation for his filing a

previous civil action against correctional officials. The defendants, however, maintain that

none of the actions about which Hope complains occurred in retaliation for Hope's prior

legal activity. Instead, they assert that force was used against Hope because of his attempt

to strike officer Pettaway, and his classification level, along with his confinement in

segregation, resulted from Hope's disruptive behavior. The affidavits and evidentiary

materials submitted by the defendants support these assertions. *Defendants' Exhibit 1

through Defendants' Exhibit 11 - Court Doc. No. 17-2 through Court Doc. No. 17-13*.

Federal law recognizes "that 'courts are ill equipped to deal with the increasingly

urgent problems of prison administration and reform.' [*Procunier v. Martinez*, 416 U.S. 396, 405, 94 S.Ct. 1800, 1807 (1974)].   As the *Martinez* Court acknowledged, 'the problems of prisons in America are complex and intractable, and, more to the point, they are not readily susceptible of resolution by decree.' *Id.*, at 404-405, 94 S.Ct., at 1807. Running a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources...." *Turner v. Safley*, 482 U.S. 78, 84-85, 107 S.Ct. 2254, 2259 (1987).  Correctional officials are therefore "accorded latitude in the administration of prison affairs[,]" *Cruz v. Beto*, 405 U.S. 319, 321, 92 S.Ct. 1079, 1081 (1972), which necessarily includes "the [inescapable] withdrawal or limitation of many [inmate] privileges and rights."  *Pell v. Procunier*, 417 U.S. 817, 822, 94 S.Ct. 2800, 2804 (1974) (quotation marks and citation omitted); *Bell v. Wolfish,* 441 U.S. 520, 546, 99 S.Ct. 1861, 1877 (1979).

"In the First Amendment context, ... some rights are simply inconsistent with the status of a prisoner or 'with the legitimate penological objectives of the corrections system.'" *Shaw v. Murphy*, 532 U.S. 223, 229, 121 S.Ct. 1475, 1479 (2001), quoting *Pell*, 417 U.S. at 822, 94 S.Ct. at 2804.  In accordance with this principle, an inmate's rights established under the First Amendment are not protected if allowing such protection is "inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system."  *Pell*, 417 U.S. at 822, 924 S.Ct. at 2804.  Thus, while inmates retain a constitutional right protected by the First Amendment to exercise their right of access to the courts freely, this right is limited by the fact of incarceration and valid

penological objectives such as maintaining institutional security and order.  The law is well settled that "central to all other corrections goals is the institutional consideration of internal security within the corrections facilities themselves."  *Pell*, 417 U.S. at 823, 94 S.Ct. at 2804; *Bell v. Wolfish,* 441 U.S. at 546, 99 S.Ct. at 1878 ("[M]aintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of both convicted prisoners and pretrial detainees.").  It is therefore clear that preservation of security and order within a correctional facility is essential to the facility's effective administration and constitutes both a compelling and substantial governmental interest.  *Pell*, 417 U.S. at 823, 94 S.Ct. at 2804; *Lawson v. Singletary*, 85 F.3d 502, 512 (11th Cir. 1996); *Harris v. Chapman*, 97 F.3d 499, 504 (11th Cir. 1996).

"The first amendment ... prohibits state officials from denying a prisoner's legal right of access to the courts....  The gist of a retaliation claim is that a prisoner is penalized for exercising a right [protected by the first amendment]."  *Thomas v. Evans*, 880 F.2d 1235, 1241-1242 (11th Cir. 1989); *Farrow v. West*, 320 F.3d 1235, 1248 (11th Cir. 2003). "In prison, of course, first amendment rights are not absolute.  *Pell v. Procunier*, 417 U.S. 817, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974).  Legitimate policies and goals of the correction system may justify restrictions limiting prisoners' [first amendment] rights.  417 U.S. at 821."  *Adams v. James*, 784 F.2d 1077, 1081 (11th Cir. 1986).  "A prisoner retains those First Amendment rights that are 'not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrective system.'  *Prison Legal News v. Cook*,

10

238 F.3d 1145, 1149 (9th Cir. 2001) (quoting *Jones v. North Carolina Prisoners' Labor Union, Inc*., 433 U.S. 119, 129, 97 S.Ct. 2532, 53 L.Ed.2d 629 (resist)) (internal quotation marks omitted)....   [P]rison authorities have a legitimate penological interest in the consistent enforcement of prison rules and ... disciplining prisoners who attempt to coerce a guard into not enforcing prison rules is reasonably related to that interest." *Hargis v. Foster*, 312 F.3d 404, 409-410 (9th Cir. 2002); *see also Jackson v. Cain*, 864 F.2d 1235, 1248 (5th Cir. 1989).  The situation is somewhat complicated when the alleged act of retaliation is undertaken to assure compliance with prison rules as inmates often attempt to "inappropriately insulate themselves from [such] actions by drawing the shield of retaliation around them." *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995), *cert. denied sub nom Palermo v. Woods*, 516 U.S. 1084, 116 S.Ct. 800, 133 L.Ed.2d 747 (1996).

To proceed on a claim for retaliation under the First Amendment and withstand the entry of summary judgment, an "inmate must establish ... three elements: (1) his [activity] was constitutionally protected; (2) the inmate suffered adverse action such that the [defendants'] allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such [activity]; and (3) there is a causal relationship between the retaliatory action and the protected [activity]. *See Bennett v. Hendrix*, 423 F.3d 1247, 1250, 1254 (11th Cir. 2005)." *Smith v. Mosley*, 532 F.3d 1270, 1276 (11th Cir. 2008); *Thaddeus-X v. Blatter*, 175 F.3d 378, 397 (6th Cir. 1999).  With respect to the causal relationship element, a prisoner must demonstrate that correctional officials intended to retaliate for his exercise of a right protected under the First Amendment and, but for the retaliatory motive,

11

the adverse act complained of would not have occurred.  *Woods*, 60 F.3d at 1166; *Smith*, 532 F.3d at 1278.

Hope alleges that defendants retaliated against him for exercising his right of access to the court in challenging the constitutionality of the hitching post, thus satisfying the first element of his retaliation claim.  *Smith*, 532 F.3d at 1277.  The second element requires Hope to demonstrate that the use of force and classification assignment "would likely deter a [prisoner] of ordinary firmness" from exercising his right of access to the courts.  *Id*.  This "presents an objective standard and a factual inquiry."  *Id*.  Under the circumstances of this case, plaintiff's assertion of this element is tenuous, at best, but the court assumes *arguendo* that this standard has been met.  Nevertheless, Hope fails to establish the third element of a retaliation claim – a causal connection between his constitutionally protected activity and the adverse actions of the defendants.

The causal connection inquiry focuses on the "subjective motivation of the defendants[,]" *Thaddeus-X*, 175 F.3d at 399, and this court must therefore determine "whether the defendants were ***subjectively motivated*** to" undertake the challenged actions against Hope for exercising his right of access to the courts.  *Smith*, 532 F.3d at 1278.  The subjective motivation issue is resolved by most courts under the burden-shifting formula set forth in *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 576 (1977).  This formula requires that the plaintiff first meet "his burden of establishing that his protected conduct was a motivating factor behind any harm" and then

"the burden of production shifts to the defendant.  If the defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on summary judgment." *Thaddeus-X*, 175 F.3d at 399 (referencing the *Mt. Healthy* motive analysis).

It is essential that federal courts "carefully scrutinize retaliation claims" brought by prisoners challenging adverse actions of correctional personnel. *Woods*, 60 F.3d at 1166. "[C]ourts must approach prisoner claims of retaliation with skepticism and particular care. *See Flaherty v. Coughlin,* 713 F.2d 10, 13 (2nd Cir. 1983).  This is [necessary because prisoners'] ...  claims of retaliation are ... easily fabricated [and] pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration.  This is so because virtually any adverse action taken against a prisoner by a prison official – even those otherwise not rising to the level of a constitutional violation – can be characterized [by the prisoner] as a constitutionally proscribed retaliatory act." *Dawes v. Walker*, 239 F.3d 489, 491 (2nd Cir. 2001), *overruled on other grounds*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002).

An inmate has the initial burden of establishing a prima facie case of unlawful retaliation by showing "that his conduct was constitutionally protected and that this conduct ... was a 'motivating factor'" behind the adverse actions of the defendants. *Mt. Healthy*, 429 U.S. at 287, 97 S.Ct. At 576.  Merely alleging the ultimate fact of retaliation, however, is insufficient. *Cain v. Lane*, 857 F.2d 1139, 1142, n.6 (7th Cir. 1988); *Woods*, 60 F.3d at

1166.  Additionally, conclusory allegations are insufficient to demonstrate the existence of each element requisite to establishing retaliation.  *Morales*, 278 F.3d at 131; *Bennett v. Goord*, 343 F.3d 133, 137 (2nd Cir. 2003) (Because prisoner retaliation claims are prone to abuse, "we are careful to require non-conclusory allegations.").  If an inmate meets his burden with appropriate evidence, the burden of production shifts to the defendants to show that they "would have reached the same decision as to [plaintiff's discipline] even in the absence of the protected conduct."  *Mt. Healthy*, 429 U.S. at 287, 97 S.Ct. at 576.  "Under the *Mt. Healthy* approach, if the government official 'can prove that [he] would have taken the adverse action in the absence of the plaintiff's protected conduct, [he] cannot be held liable.' *Thaddeus-X*, 175 F.3d at 388 n.4...."  *Smith*, 532 F.3d at 1278 n.22.

Hope makes only a conclusory and speculative assertion that the defendants used force against him and imposed a restrictive classification level because he filed a lawsuit attacking use of the hitching post.  He maintains that because the defendants had knowledge of the lawsuit their actions constituted retaliation.  Hope has submitted no direct evidence that this lawsuit was the motivating factor in any of the defendants' actions and nothing presented by Hope suggests the challenged actions were a mere pretext to punish Hope for filing a lawsuit.  The defendants also adamantly deny this allegation and argue that the adverse actions about which Hope complains occurred in an effort to maintain security due to the disruptive manner in which Hope conducted himself while at Kilby, not because of the hitching post lawsuit.

14

Hope offers only his own conclusory allegation of ultimate fact that the defendants retaliated against him for exercising his right of access to the courts.  This allegation is insufficient to defeat summary judgment.  *Waddell*, 276 F.3d at 1279; *Holifield*, 115 F.3d at 1564, n.6.  The record before the court is devoid of admissible or potentially admissible evidence, direct or otherwise, from which a reasonable fact finder could infer the requisite motivating factor.  Additionally, the circumstances, when taken as a whole, do not support making such an inference.  Thus, Hope's retaliation claim falters on this element. Moreover, even assuming that a reasonable fact finder could infer the motivating factor element, it is clear the defendants would have undertaken the complained of actions against Hope despite his having previously filed a lawsuit.  It is undisputed that Hope acted in a disrespectful manner towards officers Pettaway and Barber at the time of the alleged assault.  The classification and administrative segregation decisions resulted from Hope's undisputedly threatening, disruptive, insubordinate and unruly behavior. *Defendants' Exhibit 10 (Affidavit of Angie Baggett) - Court Doc. No. 17-11* at 1-2 ("Since Hope's arrival at Kilby [and continuing throughout his confinement at this facility], his behavior has demonstrated that he is a threat to the secure operation of Kilby Correctional Facility and thus, his placement in general population would place both staff and other inmates at risk....  The decision to continue housing inmate Hope in administrative segregation ... is a consequence of the behavior and actions of inmate Hope that continue to demonstrate that he is not appropriate for placement in general inmate population.  In fact, inmate Hope is

15

within classification criteria ... for an increase in custody and more restrictive placement....

Inmate Hope's behavior justifies his continued placement in administrative segregation

status."). "Objective prison administrators standing in [the defendants'] shoes would

assume that [Hope's cursing of the segregation officers and his combative behavior towards

them], which reeked of disrespect for the [officers'] authority, [and Hope's lengthy record

of disruptive behavior], would be noised about the prison's population and, if ignored,

could seriously impede their ability to maintain order and thus achieve the institution's

penological objectives." *Smith*, 532 F.3d at 1279. Consequently, the defendants are entitled

to summary judgment on the retaliation claim as Hope fails to establish by appropriate

evidence a causal relationship between the alleged protected activity and any adverse action

taken against him.  *Id*. at 1278-1279.

## C.  Classification

To the extent that Hope complains that the classification level assigned to him while

at Kilby was improper due to defendant Baggett's failure to follow the procedure outlined

in administrative regulations, he is entitled to no relief.  An inmate confined in the Alabama

prison system has no constitutionally protected interest in the procedure affecting his

classification level because the resulting restraint, without more, does not impose an

"atypical and significant hardship on the inmate in relation to the ordinary incidents of

prison life."  *Sandin v. Conner*, 515 U.S. 472, 484 (1995).  Because Hope has no

constitutionally protected interest in the level of his custody classification, correctional

officials may assign him to any classification level without implicating the protections of due process.  Thus, the classification decision about which Hope complains is due to be dismissed under 28 U.S.C. § 1915(e)(2)(B)(i).

### D.  Confinement at Kilby

Hope asserts that defendant Baggett refused to transfer him from Kilby to another correctional facility.  *Plaintiff's Amendment to the Complaint - Court Doc. No. 9* at 2.  A convicted prisoner has no constitutionally protected right to confinement in a particular penal facility.  *Meachum v. Fano*, 427 U.S. 215, 224 (1976).  Thus, an inmate may be confined in any correctional facility without implicating the prisoner's constitutional rights.  *Id.*; *see also Montanye v. Haymes*, 427 U.S. 236, 242 (1976).  Although the plaintiff's confinement at Kilby may have entailed "more burdensome conditions" than that of another facility such confinement is "'within the normal limits or range of custody which the conviction has authorized the State to impose.'  *[Meachum,* 427 U.S. at 225]; *see also Montanye v. Haymes,* 427 U.S. 236, 242, 96 S.Ct. 2543, 2547, 49 L.Ed.2d 466 (1976)."  *Sandin*, 515 U.S. at 478.  Consequently, the failure to transfer Hope to a correctional facility of his choosing does not rise to the level of a constitutional violation and such claim therefore provides no basis for relief in this 42 U.S.C. § 1983 action.

### E.  Conditions of Confinement

Hope maintains that his confinement in administrative segregation while at Kilby constituted cruel and unusual punishment as he remained in his cell for 23 hours each day

and was allowed to shower only every other day. *Plaintiff's Amendment to the Complaint - Court Doc. No. 9* at 2-3. This claim entitles Hope to no relief.

The Eighth Amendment proscribes those conditions of confinement which involve the wanton and unnecessary infliction of pain. *Rhodes v. Chapman*, 452 U.S. 337 (1981). Only actions which deny inmates "the minimal civilized measure of life's necessities" are grave enough to violate the Eighth Amendment. *Id.* at 347; *see also Wilson v. Seiter*, 501 U.S. 294 (1991). The allegations presented by Hope fail to establish a sufficiently grave deprivation denying minimal civilized measures of life's necessities so as to rise to the level of cruel and unusual punishment. Summary judgment is therefore due to be granted in favor of the defendants with respect to this claim.

### F.  Excessive Force

Hope complains that on July 6, 2006 defendants Pettaway and Barber used excessive force against him without provocation while defendant Dinkins witnessed the assault without intervening. *Plaintiff's Complaint - Court Doc. No. 1* at 5. Hope states that defendants Rowell, Bolling, Clay and Smith entered the area minutes after the assault but argues they are liable to him based on their failure to supervise officers Pettaway and Barber. *Id*. at 5-6. Hope describes the events as follows:

> [After a verbal altercation with officer Pettaway,] officer Pettaway and officer Barber came upstairs to the shower and Pettaway handcuffed Plaintiff and they escorted Plaintiff downstairs.... Pettaway grabbed Plaintiff from behind and choked him to the floor and started punching Plaintiff in face, head and side. Then [officer] Pettaway place a belt around Plaintiff neck and

18

> told him you got away with your hitching post case but I'll hang your ass and
> get away with it here at Kilby.... [Officer] Barber [began] kicking me in the
> side and stomping me as [Officer Dinkins] stood by and refuse to intervene
> and stop them. Warden Rowell, Capt. Bolling, Lt. Clay, [and] Sgt. Smith all
> arrived at the seen (sic) minutes later and Warden Rowell ordered Plaintiff
> be taken to [the] infirmary for body chart by medical staff of Prison Health
> Services....

*Plaintiff's Complaint - Court Doc. No. 1* at 5-6. Hope asserts that as a result of this attack

he "received injuries to his eyes, nose, head, face and neck...." *Plaintiff's Response to the*

*Defendants' Special Report - Court Doc. No. 42* at 7. The body chart performed on Hope

immediately after this incident indicates that Hope suffered various injuries including

multiple scratches to his face, abrasions on his chest, bruises on his head, chin and back,

red eyes, a bloody nose and cuts on his head. *Defendants' Exhibit 8 (Inmate Body Chart) -*

*Court Doc. No. 17-9* at 9. The nurse examining Hope likewise noted that he was "very

hostile & angry." *Id*.

The defendants adamantly deny the allegations made against them. Specifically,

they assert that defendants Pettaway and Barber used only the force necessary to subdue

Hope after he threatened and attempted to strike Pettaway. The evidentiary materials filed

by the defendants support their version of the facts. These materials demonstrate that

officer Pettaway "heard loud yelling coming from B-Block shower area" and discovered

that Hope constituted the source of the noise. *Defendants' Exhibit 1 (Affidavit of Roosevelt*

*Pettaway) - Court Doc. No. 17-13* at 1. Hope concedes that he "was speaking to another

inmate down the tier" during his shower. *Plaintiff's Complaint - Court Doc. No. 1* at 4.

19

Pettaway issued an order for "Hope to keep the noise down.  Inmate Hope refused to comply, and continued talking loud and making threats, stating, 'I'm going to kill you'.... Pettaway called for [Officer] Anthony Barber to assist ... in escorting inmate Hope back to his assigned cell D#18.  While escorting Larrie Hope ... back to his assigned cell, he (Hope) ... turn[ed] towards [Pettaway] with his (Hope['s]) fist balled, clutched, and swung at [Pettaway].  [Pettaway] subdued inmate Hope to the ground by grasping him around the waist.  While on the ground, inmate Hope was yelling, cursing, and spitting while continuing to struggle....  Pettaway yelled for [Officer] Tericus Dinkins, to get a pair of handcuffs, so that inmate Hope could be restrained.  [Officers Pettaway and Barber placed Hope's hands] behind his back and cuffed him.  At no time did [Pettaway] choke, punch or place a belt around the neck of inmate Larrie Hope." *Defendants' Exhibit 1 (Affidavit of Roosevelt Pettaway) - Court Doc. No. 17-13* at 1-2; *Defendants' Exhibit 2 (Affidavit of Anthony Barber) - Court Doc. No. 17-3* at 1-2 ("When I entered [the shower] area I observed Inmate Larrie Hope ... yelling loudly and being belligerent towards [Officer] Pettaway.  [Officer] Pettaway gave Inmate Hope several orders to exit the shower area but he refused each one.  I heard Inmate Hope state several times to [Officer] Pettaway, 'You sissy bitch.  I'll kill your ass.'  At this time I gave Inmate Hope an order to exit the shower area.  Inmate Hope continued talking loud/yelling and then complied with my order to exit the shower.  [Officer] Pettaway and I then began to escort Inmate Hope out of the ... shower area, down the stairs, back to his assigned cell....  As we approached North Conrtol Inmate

20

Hope suddenly turned toward [Officer] Pettaway with his fist clutched and swung towards [Officer] Pettaway's face and head area.  [Officer] Pettaway ducked under inmate Hope's exposed left arm ... grabbed Inmate Hope's torso between his waist and shoulder area and wrestled him (Inmate Hope) to the concrete floor.  [Officer] Pettaway and I both fell on top of Inmate Hope during the struggle to bring him under control.  While on the floor face down Inmate Hope continued to struggle, kicking and attempting to bite me ... and [Officer] Pettaway.  [Officer] Pettaway grabbed Inmate Hope's left hand as he continued to struggle and placed Hope's left arm behind his back.  [Officer] Dinkins arrived on the scene and ... Pettaway yell[ed] to [Officer] Dinkins to go get a pair of handcuffs....  Dinkins returned with the cuffs and [Hope was handcuffed by Pettaway and Barber].  At no time did I hit, kick or physically assault Inmate Hope in any way and no one else did in my presence.  [Officer] Pettaway and I used only the force that was necessary to place Inmate Hope under control and restrain him."); *Defendants' Exhibit 3 (Affidavit of Tericus Dinkins) - Court Doc. No. 17-4* at 1 ("I observed [officers] Roosevelt Pettaway and ... Anthony Barber attempting to restrain Inmate Larry Hope....  Pettaway called for me to get a pair of handcuffs ... [which I retrieved from the Segregation Office] and immediately returned back to the North Control area where ... Pettaway and ... Barber were still struggling with Inmate Hope on the floor trying to gain control over him.  Once I gave the handcuffs to [officers Pettaway and Barber they placed them on Hope]....  At no time did I ... observe Officers Pettaway and Barber use any excessive force on ... Larrie Hope."); *Defendants'*

*Exhibit 8 (Incident Report No. KCF06-552-B and Attached Statements of Officers) - Court*

*Doc. No. 17-9* at 2-6 (same).

In his response to the defendants' report, Hope disputes their version of the facts,

in relevant part, as follows:

> Defendant Pettaway ... ordered the cubicle officer to turn the shower
> off, and Defendant Pettaway and Defendant Barber handcuffed the plaintiff
> and beginned (sic) to escort the plaintiff back to his cell.
> As the plaintiff was going back to his cell Defendant Pettaway
> grabbed plaintiff from behind and choked plaintiff to the floor and started
> punching plaintiff in the face, head and side of his stomach and Defendant
> Barber started kicking the plaintiff while plaintiff was being punched by
> Defendant Pettaway. Defendant Pettaway then took a belt and placed around
> plaintiff's neck as plaintiff laid handcuffed on the floor ... [and threatened to
> hang the plaintiff].
> While this was going on, Defendant Terius [Dinkins] just stood by and
> watched and did not intervene to stop [Pettaway and Barber] from violating
> my rights.
> Defendant[s] Rowell, Bolling, Clay and Smith arrived at the seen (sic)
> [after the officers had subdued plaintiff], while the plaintiff was laying on the
> floor in pain and covered in blood.

*Plaintiff's Response in Opposition to the Defendants' Special Report - Court Doc. No. 42*

at 2-3. Hope submitted his affidavit in support of this response.

1. <u>Equal Protection</u>.  In his complaint, Hope asserts that the defendants acted in

violation of his right to equal protection when they used force against him. This claim

entitles Hope to no relief.

In order to establish a claim of discrimination cognizable under the Equal Protection

Clause, "a prisoner must demonstrate that (1) he is similarly situated to other prisoners who

received more favorable treatment; and (2) the state engaged in invidious discrimination against him based on race, religion, national origin, or some other constitutionally protected basis. *Jones v. Ray*, 279 F.3d 944, 946-47 (11th Cir. 2001); *Damiano v. Florida Parole and Prob. Comm'n*, 785 F.2d 929, 932-33 (11th Cir. 1986)." *Sweet v. Secretary, Department of Corrections*, 467 F.3d 1311, 1318-1319 (11th Cir. 2006). "[O]fficial action will not be held unconstitutional solely because it results in a ... disproportionate impact....  Proof of ... discriminatory intent or purpose is required to show a violation of the Equal Protection Clause." *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 264-265 (1977).  "'Discriminatory purpose' ... implies more than intent as volition or intent as awareness of consequences.  It implies that the decision maker ... selected ... a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Personnel Administrator of Massachusetts v. Feeney*, 442 U.S. 256, 279 (1979) (footnote and citation omitted); *see also Hernandez v. New York*, 500 U.S. 352, 359 (1991).  Evidence which merely indicates disparity of treatment or even arbitrary administration of state powers, rather than instances of purposeful or invidious discrimination, is insufficient to show discriminatory intent. *McKleskey v. Kemp,* 481 U.S. 279, 292, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987).

Hope fails to identify any similarly situated inmate who received differential treatment from the defendants.  Thus, Hope's "equal protection claim necessarily fails first because he has not shown that he was treated differently from other, similarly situated

prisoners." *Sweet*, 467 F.3d at 1319.  Hope likewise fails to demonstrate the defendants acted with discriminatory intent.  *Id.*  Hope has therefore not been denied equal protection of the law with respect to the use of force and the defendants are entitled to summary judgment on the equal protection claim.

2.  <u>Respondeat Superior</u>.  The law is well settled that defendants "can have no respondeat superior [or vicarious] liability for a section 1983 claim."  *Marsh v. Butler County*, 268 F.3d 1014, 1035 (11th Cir. 2001); *Miller v. King*, 384 F.3d 1248, 1261 (11th Cir. 2004) ("[S]upervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability."); *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir.2003) (concluding supervisory officials are not liable on the basis of respondeat superior or vicarious liability); *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999), citing *Belcher v. City of Foley*, 30 F.3d 1390, 1396 (11th Cir. 1994) (42 U.S.C. § 1983 does not allow a plaintiff to hold supervisory officials liable for the actions of their subordinates under either a theory of respondeat superior or vicarious liability.); *Cook ex rel. Estate of Tessier v. Sheriff of Monroe County, Florida*, 402 F.3d 1092, 1115-1116 (11th Cir. 2005) (In establishing liability under § 1983, a prisoner cannot rely on theories of vicarious liability or respondeat superior.).  Thus, defendants Allen, Rowell, Bolling, Barrett, Clay and Smith are liable for the challenged actions of other correctional officers only if they "personally participate[d] in the alleged unconstitutional conduct or [if] there is a causal connection between [their] actions ... and the alleged

24

constitutional deprivation[s]."  *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) (citation omitted).

It is clear from the complaint that Hope lists Richard Allen as a defendant solely due to Allen's position as Commissioner of the Alabama Department of Corrections.  Hope further contends that defendants Rowell, Bolling, Barrett, Clay and Smith are responsible for the actions of defendants Pettaway and Barber on the basis of "supervisor superior liability...."  *Plaintiff's Complaint - Court Doc. No. 1* at 6.  Hope argues "these defendants being supervisor[s] fail to discipline the officers" despite their knowledge of the injuries he suffered.  *Plaintiff's Response in Opposition to the Defendants' Special Report - Court Doc. No. 42* at 9.  He also alleges that defendants Allen, Rowell, Bolling, Barrett, Clay and Smith "knew or should have known that ... Pettaway and Barber would be assaultive toward plaintiff ... based on the history of the defendants and other officers at Kilby."  *Id.* Finally, Hope alleges that "the superior defendants failure to properly train defendants Pettaway, Barber and Dinkins" to act in accordance with prison regulations resulted in the assault.  *Id.* at 9-10.

It is undisputed that defendants Allen, Rowell, Bolling, Barrett, Clay and Smith did not participate in the use of force about which Hope complains.  There is no evidence before the court which indicates defendant Allen had any knowledge of the assault.  It is undisputed that defendants Rowell, Bolling, Clay and Smith arrived on the scene after Hope had been subdued.  Moreover, defendant Barrett was not at Kilby on the day of the

assault.  Based on the foregoing, defendants Allen, Rowell, Bolling, Barrett, Clay and Smith  may be held liable in this § 1983 action only if their actions bear a causal relationship to the purported violation of Hope's constitutional rights.  To establish the requisite causal connection and therefore avoid entry of summary judgment in favor of these defendants, Hope must present sufficient evidence of either "a history of widespread abuse [that] put[] [the defendants] on notice of the need to correct the alleged deprivation, and [they] fail[ed] to do so...." or "a ... custom or policy [that] result[ed] in deliberate indifference to constitutional rights, or ... facts [that] support an inference that [Allen, Rowell, Bolling, Barrett, Clay and Smith as supervisory officials] directed the subordinates to act unlawfully, or knew that the subordinates would act unlawfully and failed to stop them from doing so." *Cottone*, 326 F.3d at 1360 (internal punctuation and citations omitted).  A thorough review of the pleadings and evidentiary materials submitted in this case demonstrates that Hope has failed to meet this burden.

The record before the court contains no evidence to support an inference that Allen, Rowell, Bolling, Barrett, Clay or Smith directed correctional personnel to act unlawfully or knew that officers Pettaway, Barber and Dinkins would act unlawfully and failed to stop such actions.  Hope has presented no probative evidence of obvious, flagrant or rampant abuse of continuing duration in the face of which Allen, Rowell, Bolling, Barrett, Clay or Smith failed to take corrective action. While Hope makes a conclusory, unsupported assertion with respect to other incidents of force by officers at Kilby, this assertion, without

more, is insufficient to establish the requisite causal connection regarding his claims against defendants Allen, Rowell, Bolling, Barrett, Clay or Smith.  In addition, the evidentiary materials submitted by the defendants demonstrate that the actions about which Hope complains did not occur pursuant to a policy enacted by any of the supervisory defendants nor due to a lack of supervision or training.  Thus, Hope has failed to establish liability under the custom or policy standard. *Cf. Employment Div. v. Smith,* 494 U.S. 872, 877, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990); *Turner v. Safely,* 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987).  Consequently, neither method of establishing liability under the causal relationship test provides a basis for liability under § 1983.  Summary judgment is therefore due to be granted in favor of defendants Allen, Rowell, Bolling, Barrett, Clay and Smith on Hope's excessive force claim.

3.  <u>Excessive Force - Defendants Pettaway, Barber and Dinkins</u>. With respect to Hope's excessive force claim against defendants Pettaway, Barber and Dinkins in their individual capacities, the defendants argue that they are entitled to qualified immunity. However, the law of this Circuit precludes a defense of qualified immunity in cases alleging excessive force in violation of the Eighth Amendment because the use of force "maliciously and sadistically to cause harm" is clearly established to be a constitutional violation.  *Skrtich v. Thornton*, 280 F.3d 1295, 1301 (11th Cir. 2002), citing *Hudson v. McMillian*, 503 U.S. 1 (1992), and *Whitley v. Albers*, 475 U.S. 312 (1986).  "Moreover, an officer who is present at the scene and who fails to take reasonable steps to protect the

victim of another officer's use of excessive force can be held personally liable for his

nonfeasance." *Skrtich*, 280 F.3d at 1301. Thus, a qualified immunity defense is not

available when a plaintiff alleges the use of excessive force and the only question for a

federal district court is whether the plaintiff has alleged facts sufficient to survive a motion

for summary judgment, unless the force used was *de minimis*.  *Id.* at 1302; *see also*

*Hudson,* 503 U.S. at 9-10; *Harris v. Chapman*, 97 F.3d 499, 505 (11th Cir. 1996).

Accordingly, this court will consider whether the plaintiff's allegation that defendants

Pettaway and Barber maliciously and sadistically used excessive force against him while

defendant Dinkins witnessed this attack without intervening to protect Hope, which the

court must take as true for purposes of summary judgment, sets forth a violation of his

Eighth Amendment rights.

> Under the Eighth Amendment, force is deemed legitimate in a custodial
> setting as long as it is applied "in a good faith effort to maintain or restore
> discipline [and not] maliciously and sadistically to cause harm." *Whitley v.
> Albers,* 475 U.S. 312, 320-21, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986)
> (quoting *Johnson v. Glick,* 481 F.2d 1028, 1033 (2nd Cir.1973)); *see also*
> *Hudson v. McMillian,* 503 U.S. 1, 8, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992).
> To determine if an application of force was applied maliciously and
> sadistically to cause harm, a variety of factors are considered including: "the
> need for the application of force, the relationship between that need and the
> amount of force used, the threat reasonably perceived by the responsible
> officials, and any efforts made to temper the severity of a forceful response."
> *Hudson,* at 7-8, 112 S.Ct. 995; *see also Whitley,* 475 U.S. at 321, 106 S.Ct.
> 1078; *Harris v. Chapman,* 97 F.3d 499, 505 (11th Cir.1996).   From
> consideration of such factors, "inferences may be drawn as to whether the use
> of force could plausibly have been thought necessary, or instead evinced such
> wantonness with respect to the unjustified infliction of harm as is tantamount
> to a knowing willingness that it occur." *Whitley,* 475 U.S. at 321, 106 S.Ct.

1078 (quoting *Johnson,* 481 F.2d at 1033).

*Skrtich*, 280 F.3d at 1300-1301.

Hope  contends that defendants Pettaway and Barber grabbed him from behind, threw him to the floor, choked him and repeatedly hit/kicked him for no apparent reason and while he posed no threat to them. *Plaintiff's Complaint Court Doc. No. 1* at 5.  Hope maintains that defendant Dinkins "stood by and refuse[d] to intervene and stop them." *Id.* The medical records submitted by the defendants indicate that as a result of this altercation Hope suffered injuries to his head, face, neck, body and back.  The defendants deny Hope's allegation regarding the use of excessive force and maintain that officers Barber and Pettaway used only the amount of force necessary to quell the inmate's resistance and gain control of Hope while he struggled with the officers. Viewing the facts in the light most favorable to Hope, as is required at this stage of the proceedings, the court concludes defendants Pettaway, Barber and Dinkins are not entitled to qualified immunity as the plaintiff has alleged facts sufficient to survive their motion for summary judgment. *Skrtich*, 280 F.3d at 1301.  Specifically, disputed issues of material fact exist regarding the need for the use of force by Pettaway and Barber and whether the amount of force used was appropriate.  Consequently, the motion for summary judgment with respect to the excessive force claim lodged against defendants Pettaway, Barber and Dinkins in their individual capacities is due to be denied.

### G.  Deliberate Indifference to Safety - Failure to Protect

To the extent that Hope argues that defendants Allen, Rowell, Bolling, Barrett, Clay and Smith acted with deliberate indifference to his safety in failing to protect him from assault by officers Pettaway and Barber, he is likewise entitled to no relief.  A correctional official may be held liable under the Eighth Amendment for acting with "deliberate indifference" to an inmate's safety when the official knows the inmate faces "a substantial risk of serious harm" and with such knowledge disregards the risk by failing to take reasonable measures to abate it. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). A constitutional violation occurs only "when a substantial risk of serious harm, of which the official is subjectively aware, exists and the official does not 'respond[] reasonably to the risk.' *Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970, 1982-83, 128 L.Ed.2d 811 (1994). A plaintiff must also show that the constitutional violation caused his injuries." *Marsh*, 268 F.3d at  1028.

In *Farmer*, the Court identified both objective and subjective elements necessary to establish an Eighth Amendment violation.  With respect to the requisite objective elements, an inmate must first show "an objectively substantial risk of serious harm ... exist[ed]. Second, once it is established that the official is aware of this substantial risk, the official must react to this risk in an objectively unreasonable manner."  *Marsh*, 268 F.3d 1028-1029.  As to the subjective elements, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw  the  inference....   The  Eighth  Amendment  does  not  outlaw  cruel  and  unusual

30

'conditions'; it outlaws cruel and unusual 'punishments.'  ...  *[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment*." *Farmer*, 511 U.S. at 837-838 (emphasis added); *Campbell v. Sikes*, 169 F.3d 1353, 1364 (11th Cir. 1999) (citing *Farmer*, 511 U.S. at 838) ("Proof that the defendant should have perceived the risk, but did not, is insufficient."); *Cottrell v. Caldwell*, 85 F.3d 1480, 1491 (11th Cir. 1996) (same).  The conduct at issue "must involve more than ordinary lack of due care for the prisoner's interests or safety.... It is *obduracy and wantonness, not inadvertence or error in good faith*, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock."  *Whitley v. Albers*, 475 U.S. 312, 319 (1986) (emphasis added).

> To be deliberately indifferent, Defendants must have been "subjectively aware of the substantial risk of serious harm in order to have had a '"sufficiently culpable state of mind."'" *Farmer*, 511 U.S. at 834-38, 114 S.Ct. at 1977-80; *Wilson v. Seiter*, 501 U.S. 294, 299, 111 S.Ct. 2321, 2324-25, 115 L.Ed.2d 271 (1991)....  Even assuming the existence of a serious risk of harm and legal causation, the prison official must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists - and the prison official must also "draw that inference." *Farmer*, 511 U.S. at 837, 114 S.Ct. at 1979.

*Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003).  "The known risk of injury must be a strong likelihood, rather than a mere possibility before a [correctional official's] failure

to act can constitute deliberate indifference." *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) (citations and internal quotations omitted).  As the foregoing makes clear, "[m]erely negligent failure to protect an inmate ... does not justify liability under section 1983...." *Id*.

Pursuant to the aforementioned criteria, Hope is "required to produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation[]" in order to survive summary judgment on his deliberate indifference claim against the supervisory officials. *Hale v. Tallapoosa County*, 50 F.3d 1579, 1582 (11th Cir. 1995); *Farmer*, 511 U.S. at 837-838 (To circumvent entry of summary judgment on a properly supported motion, plaintiff must produce sufficient evidence which demonstrates (1) an objectively substantial risk of serious harm; (2) a subjective awareness of this risk on the part of the defendants; (3) the defendants responded to such risk in an objectively unreasonable manner; and (4) the actions/omissions of the defendants caused his injuries); *Marsh*, 268 F.3d at 1028-1029 (same).

The record is completely devoid of evidence that the altercation with officers Pettaway and Barber occurred due to deliberate indifference on the part of defendants Allen, Rowell, Bolling, Barrett, Clay and Smith. Hope presents no evidence of an objectively substantial risk of serious harm nor is there any evidence demonstrating subjective awareness of a substantial risk of such harm by defendants Allen, Rowell, Bolling, Barrett, Clay and Smith, each of which is a required element of the instant Eighth

Amendment claim. "Plaintiff has failed to establish that [these] Defendant[s] had a subjective awareness of a substantial risk of serious physical [harm] to Plaintiff; thus, Plaintiff has failed to establish a required element of this claim. When viewing the evidence most favorably toward Plaintiff, a claim for deliberate indifference has not been established...." *Carter*, 352 F.3d at 1350 (footnote omitted).  Consequently, summary judgment is due to be granted in favor of defendants Allen, Rowell, Bolling, Barrett, Clay and Smith on any claim of deliberate indifference lodged against them by Hope.

## IV.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.  The motion for summary judgment filed on behalf of defendants Richard Allen, W. G. Rowell, Leon Bolling, Bobby Barrett, Carl Clay and Allan D. Smith be GRANTED.

2.  The claims brought against defendants Allen, Rowell, Bolling, Barrett, Clay and Smith be DISMISSED with prejudice.

3.  Defendants Allen, Rowell, Bolling, Barrett, Clay and Smith be DISMISSED as a parties to this cause of action.

4.  The motion for summary judgment as to the claims for monetary damages against defendants Roosevelt Pettaway, Anthony Barber and Tericus Dinkins in their official capacities be GRANTED and such claims DISMISSED with prejudice.

5.  The motion for summary judgment with respect to the plaintiff's excessive force claim against defendants Pettaway, Barber and Dinkins in their individual capacities be

DENIED.

6.   The plaintiff's excessive force claim against defendants Pettaway, Barber and Dinkins in their individual capacities be set for a jury trial before the district judge assigned this case.

It is further

ORDERED that on or before June 5, 2009 the parties may file objections to the Recommendation.  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party is objecting.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); *see Stein v. Reynolds Securities, Inc*., 667 F.2d 33 (11th Cir. 1982); *see also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done, this 22nd day of May, 2009.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
CHIEF UNITED STATES MAGISTRATE JUDGE